David and Mary KINEE, Individually and on behalf of all members of a class of borrowers similarly situated, et al.

v.

ABRAHAM LINCOLN FEDERAL SAVINGS & LOAN ASS'N. et al.

Civ. A. No. 72-2269.

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1973.

Arnold Levin, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiffs.

Judah I. Labovitz, Wolf, Block, Schoor & Solis-Cohen, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Currently before this Court are a number of Rule 12 motions which raise an even larger number of problems. The Court will attempt to summarize the history of this litigation sufficiently that the reader may make intelligent sense of what follows, and then will deal with the issues, not so much in the logical order of their importance to the case, as in their order of difficulty, starting with the easiest first.

The individual plaintiffs in this case are five husband and wife couples. Plaintiffs David and Mary Kinee obtained a mortgage from defendant Colonial Mortgage Service Company. The

other four couples named as individual plaintiffs similarly obtained mortgages from four of the named defendants. Each plaintiff couple obtained only one mortgage from one named defendant. On November 16, 1972, suit was instituted against 177 named defendants by the five named plaintiff couples in their own right and on behalf of all those similarly situated.[1] The suit complains that the defendants, as writers of mortgages, required plaintiffs, as part of their mortgage agreements, to prepay, in monthly installments, a sum equal to one-twelfth the annual expected property tax, mortgage insurance premiums, sewer and water rentals, and other possible liabilities which, if not paid, might result in a lien on the mortgage property with higher priority than the lien held by the mortgagee. The essence of the complained-of practice as nearly as the Court can determine, is that the lending institutions pay no interest on the monies thus obtained even though they use the monies for their own investment purposes and obtain a return on those monies. Plaintiffs have proposed a number of theories as to why the failure to pay interest on the monies thus obtained is an actionable wrong in and of itself. They also allege that, even if the failure to pay interest is not in and of itself illegal, the defendants have conspired together to eliminate the alternative practice of paying interest on such deposits, a variation in the terms of the mortgage which is advantageous to borrowers, and a term upon which there might be some competition among lenders expected, and that in conspiring to eliminate competition as to this term in the mortgage, have violated the antitrust laws. They also allege that the requirement of the acceptance of the prepayment agreement as a condition of obtaining a mortgage constitutes an illegal tie-in under Section 1 of the Sherman Act.

■ To jump right into the heart of this affray, plaintiffs urge as one ground for the positive illegality of the actions of defendants that the actions of the defendants violate 15 U.S.C. § 1601 et seq., popularly known as the Truth-in-Lending Act. However, the practices of which plaintiffs complain have been expressly eliminated from the operation of the Truth-in-Lending Act by various provisions of that Act and regulations promulgated pursuant thereto. It is not necessary to go into a detailed analysis of this exemption in this memorandum, as such an analysis has already been done in Stavrides v. Mellon National Bank and Trust Co., 353 F. Supp. 1072 (W.D.Pa.1973). See also, Graybeal v. American Savings and Loan Association, 1973, 59 F.R.D. 7 (D.Columbia, 1973); Umdenstock v. American Mortgage and Investment Company, 363 F.Supp. 1375 (W.D.Okla.1973); and Williams v. American Savings Association, No. C.A.–3–6350–D (N.D.Tex. March 26, 1973.) The Court finds itself in complete agreement with the rationale of these cases, and accordingly plaintiffs' claims under the Truth-in-Lending Act will be dismissed pursuant to Rule 12 (b)(6) for failure to state a claim upon which relief can be granted.

■ Plaintiffs' so-called "fifth cause of action" alleges that, when the complained of actions are undertaken by "a savings and loan association" those actions violate the Homeowners Loan Act of 1933, 12 U.S.C. § 1461 et seq. The plaintiffs have failed to enlighten the Court as to which Section of the Homeowners Loan Act is violated by the complained-of actions, and as to the theory by which the complained-of actions violate that Act. First, it is obvious that the actions of the state chartered "savings and loan associations" are not subject to the Homeowners Loan Act, and therefore cannot be in violation of it. Therefore, as to the state chartered savings and loan association defendants, the

---

1. Forty-six defendants have been voluntarily dismissed to date, leaving 131 defendants as of this writing.

fifth cause of action for a violation of the Homeowners Loan Act of 1933 must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

■ As to the federally chartered savings and loan associations, it is not immediately apparent on the face of the pleadings, or of the briefs filed in opposition to the motions to dismiss, how the actions of the federal savings and loan associations violate the Homeowners Loan Act. On the other hand, the defendant federal savings and loan associations have argued quite persuasively that the complained of course of action is specifically authorized by the regulations of the Home Loan Bank Board, the administrative agency charged with regulating federally chartered savings and loan associations under the Homeowners Loan Act of 1933. The regulations cited by the defendants do indeed appear to authorize the complained of practice. Plaintiffs only attack on the existence of this authorization rests on such a strained interpretation of the word "distribute" as used in 12 C.F.R. ¶ 544 (1)(a)(1) and (b)(10) that the Court has concluded that it is wholly without merit. Even if this Court were to conclude that the regulations did not specifically authorize the practice complained of, the plaintiffs would still be in the position of never having brought to the Court's attention any provision of the Homeowners Loan Act or of the regulations promulgated pursuant thereto which forbid the practice and therefore might arguably create a cause of action for following the practice. However, it is not necessary for the Court to involve itself in this question, as the Court is convinced that the practice followed by the federally chartered savings and loan associations is specifically authorized by the regulations of the Home Loan Bank Board, and that therefore plaintiffs' fifth cause of action as it applies to federally chartered savings and loan associations alleging that the complained-of practices are in violation of the Homeowners Loan Act of 1933 must be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

■ The only two remaining theories of the plaintiffs by which the per se legality of the complained-of practices is attacked are based on state law. One of the counts, or both, seem to be based on, or at least include, some theory of unjust enrichment. This latter claim, on nearly identical facts, has recently been dealt with by a Pennsylvania Court, which concluded that such a claim failed to set forth a cause of action against the defendants. Buchanan v. Brentwood Federal Savings and Loan Association, No. 2781 January 1972 Term (Pa.C.P. Allegheny Co., March 6, 1973). This may be some indication of which way the wind is blowing in the state courts concerning plaintiffs' third and fourth causes of action. However, until the Supreme Court of the State of Pennsylvania has spoken on these issues, the law of Pennsylvania relating thereto must be taken as an open and unsettled issue. With the dismissal of plaintiffs' second and fifth causes of action, the per se illegality of the complained-of actions is no longer before the Court on any federal ground. If this Court were to find that it had pendant jurisdiction over the plaintiffs' state law claims, and then to exercise such jurisdiction to decide those claims in advance of the Supreme Court of Pennsylvania, it would in effect be providing an advisory opinion on what it believed the state law of Pennsylvania should be, although this is usually framed in the more polite terms of putting forth what the deciding court thinks that the Supreme Court of Pennsylvania would decide. In a diversity case, with independent federal jurisdiction, this circumstance cannot always be avoided, but it is a legitimate consideration in deciding whether or not to exercise pendant jurisdiction. For as the Supreme Court of the United States said in United Mineworkers v. Gibbs, (1966) 383 U.S. 715 at 726, 86 S.Ct. 1130 at 1139, 16 L. Ed.2d 218:

"That power need not be exercised in every case in which it is found to ex-

ist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, (citations omitted). Needless decisions of state of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

The plaintiffs in this case have filed an action in state court against the defendants in this case on the state grounds. In that action they will indeed get a sure-footed reading of the state law. Further, the dismissal of the federal causes of action which called into question directly the per se legality of the complained of actions makes it questionable whether the federal cause of action which remains in the case and the state causes of action contained in plaintiffs' third and fourth causes of action contain sufficiently similar factual and legal issues that considerations of judicial economy, convenience, and fairness to the litigants militate for the exercise by this Court of pendent jurisdiction at all. In *Stavrides*, supra, the Court found insufficient similarity to justify exercise of pendent jurisdiction on similar facts, and with that decision we must agree. This Court does not choose to exercise pendent jurisdiction over the causes of action stated in plaintiffs' "third cause of action" and plaintiffs' "fourth cause of action", and accordingly they will be dismissed without prejudice.

We now turn to the last remaining "cause of action" which plaintiffs assert. This alleges claims under Section 4 of the Clayton Act, 15 U.S.C. § 15, for violations of Sections 1, 2, and 3 of the Sherman Act and Sections 3 and 15 of the Clayton Act, but in fact the allegations make out only two alleged violations, one for a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the other for the imposition of a contract in restraint of trade, to wit, one containing an unlawful tie-in arrangement, under the same Section. Here the plaintiffs have the upper-hand, for the time being at any rate. The plaintiffs came dangerously close, however, to losing this upper-hand through sloppy· pleading. Paragraph 24 of the complaint reads:

"Beginning sometime in the 1960's, the exact date being unknown to the plaintiffs, and continuing up to and including the date of filing of this Complaint, the defendants, together with certain co-conspirators presently unknown to plaintiffs and members of the class they represent, have engaged in this unlawful combination and conspiracy in unreasonable restraint of interstate trade and commerce; an unlawful combination and conspiracy to monopolize interstate trade and commerce and an unlawful combination and conspiracy in restraint of trade and commerce in violation of Sections 1, 2, and 3 of the Sherman Act, and Sections 3, 4, 15 and 26 of the Clayton Act."

Paragraph 25 of the complaint reads:

"The substantial terms of the aforesaid violations are that defendants with concerted action changed from the practice of deducting payments for taxes, assessments and insurance from borrowers' principal debt balance to the "escrow" practice with knowledge that other defendants, co-conspirators and lending institutions had made such a change or were intending to make such a change, and in reliance upon such changes and intentions and as a result of consultations with respect to such changes and intentions with other defendants, co-conspirators and lending institutions."

Now it is true that paragraph 25 of the complaint makes it appear that plaintiffs' theory of a conspiracy in re-

straint of trade is bottomed on their being able to show that all of the defendants changed from the principal debt balance method to the escrow method as a result of the conspiracy, i. e. that all of the defendants at one time used the principal debt balance method, and that as a result of some meeting of the minds, they all decided to change to the escrow practice. The defendants have jumped upon this formulation of plaintiffs' thoery with a zest that would have done credit to any common law pleader. They have also responded with one of the more complex versions of a negative pregnant that it has ever been this Court's privilege to see.

Essentially, the argument of the defendants is that, since they can establish beyond peradventure that some of the members of the alleged set of conspirators have used the escrow practice from time immemorial, that the plaintiffs' complaint fails to allege a cause of action.[1] The plaintiffs have responded in their briefs with a very plausible theory to rehabilitate their pleading. The essence of their complaint, they say, is not necessarily that all defendants at one time used the principal debt balance method, but that the reason that the principal debt balance method became a scarce commodity in the mortgage market, and was all but eliminated as a point upon which mortgage lenders competed, was as a result of conspiracy between mortgage lenders to eliminate the principal debt balance method and to move from that to the escrow method. On this theory, it is irrelevant whether some individuals who are defendants in this case have always used the escrow method as long as, as a result of combined and conspiratorial action, other mortgage lenders came to adopt the escrow method as more advantageous to them

and as a mortgage condition concerning which there would be no competition.

While it is true that the exact language of paragraph 25 of the complaint appears to require, if the probata are to be exactly matched with the allegata, that all the defendants in conspiracy changed from the principal debt balance method to the escrow method, this Court is inclined to take the tenor of paragraphs 24 and 25 read together to allow the proof of any illegal conspiracy including some or all of the defendants having to do with the disappearance of or a substantial reduction of the availability of the principal debt balance method of accounting for tax, assessment, and insurance payments from the market as a condition concerning which there was substantial competition. If such a conspiracy and such a practice were established, it would be a violation of the anti-trust laws.

Read thus broadly, in what the Court considers a reasonable effort to avoid useless amendments to the pleadings, which might lead to an old time pleading war, the conspiracy theory states a claim upon which relief might be granted. Defendants have claimed that the complaint alleges only "conscious parallelism" which is not an anti-trust violation. They are, in the Court's opinion, mistaken. The complaint alleges parallel behavior and also alleges a shift from divergent to parallel behavior. The complaint claims these to be the product of a conspiracy. While the facts are only circumstantial, and may also be consistent with non-conspiratorial behavior, they save the complaint from being a "bare bones" pleading merely adopting the language of the statute, and put defendants on proper notice concerning what is being complained of. Whether plaintiffs can

---

1. Technically, the determination of the fact that some of the defendants have always used the escrow method should require extraneous proofs. However, the plaintiffs have to all intents admitted this particular fact, and it seems reasonable to deal with the issues here discussed sub nom. "failure to state a claim" (which is what defendants have called it) rather than attempt a more accurate classification in other terms e. g. the permissible scope of proof under the pleadings.

prove what they allege is a wholly different question.

■ The defendants have combined their motions to dismiss for failure to state a claim under Rule 12(b)(6) with stacks of affidavits and other materials purporting to show that this or that fact involved in the allegations of plaintiffs' anti-trust counts are untrue. The Court could choose to consider these proffered extraneous sources of information on a 12(b)(6) motion, pursuant to the provisions of the last sentence of Rule 12(b)(6), by considering the motions under 12(b)(6) as Rule 56 motions for summary judgment. Even if the Court were to do this, however, the motions for summary judgment would have to be denied at this point in the case. The discovery proceedings in this case have been stayed by order of the Court pending the decision of the Court on Rule 12 motions. The plaintiffs have had no opportunity for discovery. The plaintiffs are in no position to meet the proofs beyond the record which have been proffered by the defendants. Further, much of the proof of the plaintiffs in their conspiracy allegations will be dependent upon material largely in the possession and knowledge of the defendants. To grant a motion for summary judgment under such circumstances would be patently unfair. Counsel for defendants might gain much from a reading of 6 Moore's Federal Practice ¶ 56.15(5) relating to the proper consideration of access to proof in deciding whether or not to grant a motion for summary judgment. Therefore, the Court has decided to exclude the matters proffered by the defendants which are outside the pleadings from its consideration at this time. It may be that when discovery is completed the defendants may be entitled to their summary judgment but consideration of that issue will necessarily have to be postponed until that time.

■ A few other considerations require comment. While the plaintiffs' allegation that the escrow arrangement and the mortgage loans constitute separate products and are an illegal tie-in arrangement under the anti-trust laws seems a little strained, this Court thinks it better practice to allow the completion of discovery before ruling on the separateness of those economic entities. Furthermore, the defendants have, pursuant to Rule 12(b)(1), challenged the court's jurisdiction under the anti-trust laws by claiming that the business of writing mortgages is local in nature and that the required impact on inter-state commerce has not been shown. In this regard, the Court observes that many of the institutions named as defendants write mortgages in places other than Pennsylvania, and further that the magnitude of the mortgage business in Eastern Pennsylvania must necessarily have impact on inter-state commerce. The Court is simply not persuaded that a conspiracy of the economic magnitude of the one alleged can possibly be sufficiently local in its impact as to escape the scrutiny of the federal anti-trust laws.

■ Further, the federally chartered savings and loan associations claim that, since they are authorized to perform the complained of acts by the regulations of the Federal Home Loan Bank Board, that they are exempt therefore from the operation of the anti-trust laws. However, they concede that Congress never specifically exempted federally-chartered savings and loan associations from the operation of the anti-trust laws. They merely claim that the regulations of the Federal Home Loan Bank Board, properly followed, "occupy the field", and that a violation of the anti-trust laws cannot be made out when those regulations are followed. The mistake in this reasoning is that the regulations of the Home Loan Bank Board do not require that interest not be paid on monies taken in under the escrow arrangements, they merely authorize the practice of not paying such interest. Presumably, it would be perfectly legal for federal savings and loan associations to pay such interest, and if competition demanded it, such interest would probably be paid by

them. While the federal savings and loan associations could not be sued for the practice in and of itself, if they have joined a conspiracy to restrain competition by making the practice the only practice in the face of other competitive alternatives, nothing in the law which has been brought to the attention of this Court would exempt them from liability under the anti-trust laws for joining a combination and conspiracy in restraint of trade. Therefore, the separate motion of the federal savings and loan associations for dismissal pursuant to Rule 12(b)(6) of the anti-trust count will be denied, insofar as it applies to the conspiracy charge, but will be granted insofar as it applies to the illegal tie-in charge.

The defendants have moved to strike plaintiffs' complaint, or in the alternative, various paragraphs thereof, under Rule 12(f) for being redundant, immaterial, impertinent, or scandalous.

■ The first ground for this motion is that some of the allegations are "patently untrue" and therefore impertinent and scandalous. Needless to say, this is not. a proper 12(f) ground, and verges on impertinence itself.

■ The second ground complains of redundancy and immateriality. Some latitude must be given pleaders in complex cases. The complaint could have been better, but the defendants have not been prejudiced by its form. This Court will not undertake to reform the complaint technically and minutely, aside from the clarification of ¶¶ 24 and 25 set. out above. Defendants' 12(f) motions are denied.

The Federal National Mortgage Association was sued on the theory of a violation of the Truth-in-Lending Act only. Since all theories relating to· violations of the Truth-in-Lending Act have been dismissed, the Federal National Mortgage Association will be dismissed from the case as a party defendant.

■ ■ One last circumstance deserves discussion. The defendants have alleged that the plaintiffs' attorneys violated Rule 11 when they filed this complaint. Rule 11 requires that: "The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it." This Court has concluded that in making the general allegations concerning an anti-trust violation by lenders who currently practice the "escrow" method of collecting tax prepayments, etc. there was sufficient information available that no violation of Rule 11 has been made out. This Court cannot say that a general knowledge of parallel behavior, coupled with a change from non-parallel to parallel behavior, is not sufficiently indicative of a conspiracy to support a good faith allegation thereof. However, the method by which the plaintiffs' attorneys chose to discover which lending institutions in the Eastern District practiced the escrow method, and thereby were proper subjects of suit, was, in the opinion of this Court, improper, and they are to be censured for adopting it. What they did was to take the Philadelphia phone book, and to sue every individual or lending institution listed in the Philadelphia phone book under the heading of mortgage brokers or related headings. More than one-fourth of the parties thus sued have been dismissed from the case because they do not practice the escrow method, and therefore are not even arguably proper parties. The plaintiffs' attorneys set out a dragnet. Having put a large number of parties to the inconvenience, expense and possible anxiety of being sued, they then were able conveniently to separate the wheat from the chaff without great effort. They chose to inconvenience a large number of parties rather than inconvenience themselves with proper investigation as to who the proper parties would be. When they signed their pleading, they could not say that they in fact had reasonable basis to believe that the allegations were true as to each defendant, but merely that there was within the aggregate

mass of the defendants sued, a significant number of defendants, exact identities unknown to which the allegations applied, together with an unknown number to which the allegations did not apply. This is simply not a proper way to proceed in federal court, or in any court for that matter. It is an abuse of process to use the issuance of a complaint to discover which of a number of parties is the proper party to be sued. If the plaintiffs had attempted reasonable investigation, and if some of the lending institutions who were not proper parties had not cooperated in that investigation, then perhaps they would have been justified in undertaking the course of action which they undertook. But under the circumstances of this case, the course of action which they chose was grossly improper.

The remaining defendants have attempted to make hay from the misdeeds of plaintiffs' attorneys, claiming that a violation of Rule 11 must necessarily end in the dismissal of the complaint. The Court is not persuaded by their argument. It is not the remaining defendants, the parties who would have been sued had the plaintiffs' attorneys undertaken proper investigation in the first place, who have been prejudiced by the misdeeds of plaintiffs' attorneys. It would not be in the interests of justice to dismiss this case with prejudice prior to an adjudication, nor would it really be in the interest of the remaining defendant banks, since some other borrower would be free to bring the same suit on the same basis even if the named plaintiffs were estopped. It is inconceivable that a class could be bound by a dismissal on the merits for a violation of Rule 11. To dismiss the case without prejudice, however, would be a futile act because we would simply face a refiling, together with the service of the complaint on 131 party defendants, and a videotape replay of the proceedings in this action to date. Indeed, the Court has not been impressed with the misplaced vigor with which the remaining non-prejudiced defendants have pressed for a general dismissal on the basis of Rule 11, thereby obscuring the rights of those actually injured by the conduct of defendants' attorneys, that is, those defendants who were wrongfully sued and who have been dismissed. In protection of the rights of those parties, this Court will order attorneys for the plaintiffs to supply the Court with a list of the 46 parties heretofore dismissed voluntarily, together with the counsel who represented those parties while they were still on the record of this proceeding. The Court will then notify the attorneys for those parties that they have a right to file with the Court a bill of costs for the expenses incurred by their respective clients in having been forced improperly to appear and to defend this suit. Those costs will then be taxed to the attorneys for the plaintiffs.

ORDER

And now, to wit, this 27th day of September, 1973, pursuant to defendants' motions under Rule 12(b)(6), plaintiffs' claims under their second cause of action and fifth cause of action are hereby dismissed for failure to state a claim upon which relief can be granted. The claims made in plaintiffs' third cause of action and fourth cause of action are hereby dismissed as improvidently brought in the Federal Court and as not being proper subjects for the exercise of pendant jurisdiction. Defendant Federal National Mortgage Association is dismissed from the case as a party defendant. Plaintiffs' anti-trust claim based upon the existence of an illegal tie-in is dismissed as to the federally chartered savings and loan associations. The remaining parts of all of defendants' outstanding Rule 12 motions are hereby denied. The Court does not choose to consider extraneous proofs pursuant to Rule 12(b)(6) and 56 at the present time, and any outstanding motion requesting relief in the nature of summary judgment is hereby denied as premature. All outstanding motions pursuant to Rule 11 are hereby denied, but counsel for plaintiffs is hereby di-

rected to supply the Court with a list of the voluntarily dismissed defendants and their counsel, so that the Court may take the appropriate action more fully described in the above memorandum.

It is so ordered.