**Robin L. ALBRIGHT,**
**Plaintiff-Appellee,**

v.

**The UPJOHN COMPANY,**
**Defendant-Appellant.**

**No. 85–5256.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 11, 1986.

Decided April 24, 1986.

---

Winfrey P. Blackburn, Jr., W. Kennedy Simpson, Stites and Harbison, Louisville, Ky., Peter A. Copeland, argued, The Upjohn Co. Kalamazoo, Mich., for defendant-appellant.

Carl A. Pallo, Joseph J. Golden, argued, Louisville, Ky., for plaintiff-appellee.

Before KRUPANSKY and GUY, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge

This case involves an appeal from an order of the district court denying defendant-appellant's motion for sanctions under Fed.R.Civ.P. 11. For the reasons set forth below, we reverse and remand to the district court for the imposition of sanctions.

On September 21, 1983, attorneys for plaintiff-appellee Robin L. Albright filed this products liability action in the United States District Court for the Western District of Kentucky against nine pharmaceutical manufacturers and unknown defendants. On the same day, seven other actions were filed by the same attorneys on behalf of different plaintiffs against the same nine manufacturers. These defendants were involved in the manufacture, sale and distribution of tetracycline-based drugs, which allegedly had caused the permanent staining and discoloration of each plaintiff's teeth. Litigation proceeded pursuant to Local Rule 19 governing complex litigation because the case involved more than five defendants.

In her complaint, Albright alleged that while an infant and during her teeth-forming years she ingested drugs which had a tetracycline base, and that said drugs were manufactured, publicized, distributed and sold by the named defendants and possible unknown defendants who may have been in the same business. She alleged that each of the defendants was strictly liable to her for all adverse consequences and injuries resulting from the use of said drugs. Albright further stated that she did not know the brand name or manufacturer of the particular drugs she ingested which caused discoloration of her teeth, "but one or more

of the Defendants herein did manufacture, publicize, distribute and sell said drugs so used and ingested by Plaintiff." She alleged that the manufacturers of tetracycline-based drugs engaged in "conscious parallelism" in that their actions "had the effect of substantially aiding or encouraging each other's failure to adequately warn." Albright alleged that the defendants were jointly and severally liable to her, and because she did not know which of the defendants manufactured, sold and distributed the drugs which she ingested, she claimed that the burden was upon each defendant to exculpate itself by proving that its drug did not cause her injuries. Finally, Albright stated that she first discovered that her injuries and damages were caused by tetracycline-based drugs on September 22, 1982, when an article concerning another lawsuit filed against tetracycline manufacturers appeared in a local newspaper.

Following the first pretrial conference, Upjohn and other defendants served Albright with interrogatories and a request for production of documents. Albright responded that "during her childhood and teeth-forming years she was prescribed by physicians various antibiotic drugs, including tetracyclines. The only brand names of such tetracycline drugs that Plaintiff is aware that she was prescribed and ingested is [sic] Tetrex, Declomycin, Mysteclin-F and this is by oral communication from Dr. Robert Kidd to Plaintiff's mother." Attached to Albright's answers to interrogatories were all medical records in her possession. The records of Dr. Kidd showed that he had prescribed for Albright between 1962 and 1967 the tetracycline-based drugs Tetrex, Declomycin and Mysteclin-F.[1] Also attached were the medical records of Dr. Carroll Witten, which revealed that he had prescribed Terramycin[2] for Albright in 1974, when she

was almost fourteen years old. In her answers to interrogatories, Albright indicated that she had also been treated by a Dr. Wolf who performed a tonsillectomy in 1966 or 1967, but that she did not know the location of Dr. Wolf's records. Dr. Wolf is deceased and the surgery had been performed at St. Joseph's Hospital, which had closed. Albright further responded that she had been treated by Dr. E.J. Fruehwald sometime between 1961 and 1963 for tonsilitis and that she also was unable to locate those records. Albright's answers to interrogatories included a signed authorization permitting the defendants to obtain her medical records from all of her physicians.

On June 8, 1984, Upjohn and four other defendants moved for summary judgment on the grounds that they had not been identified as manufacturers, distributors or sellers of any tetracycline drugs taken by Albright. On July 9, 1984, the court entered an order giving Albright sixty days within which to file an amended complaint. Albright never responded to the defendants' motion for summary judgment. Instead, on August 28, 1984, Albright filed an amended complaint in which only three tetracycline-based drug manufacturers were named as defendants. The three remaining defendants were the manufacturers of the tetracycline-based drugs prescribed to Albright by Dr. Kidd; these manufacturers had not joined in the motion for summary judgment. On September 13, 1984, the court granted Upjohn and its codefendants' motion for summary judgment and dismissed all claims against them with prejudice. On September 24, 1984, Upjohn moved the court to alter the September 13th judgment to include an award of expenses, including attorney fees, pursuant to Federal Rule of Civil Procedure 11. The district court denied Upjohn's motion to

---

1. Tetrex was manufactured by defendant Bristol Laboratories, Declomycin was a product of defendant Lederle Laboratories, and defendant E.R. Squibb and Sons manufactured Mysteclin-F.

2. Terramycin was defendant Pfizer, Inc.'s tetracycline product. (Pfizer, Inc. was not named as a defendant in Albright's amended complaint, apparently because she was prescribed the drug after her teeth-forming years.)

amend, and Upjohn now appeals from the denial of that motion.[3]

Federal Rule of Civil Procedure 11, as amended effective August 1, 1983, provides in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Appellant Upjohn argues that counsel for Albright violated Rule 11 by failing to conduct a reasonable prefiling investigation of the facts. Upjohn points out that counsel for Albright received the relevant medical records from Dr. Kidd in November 1982, and at that time became aware that Albright had ingested Tetrex, Declomycin and Mysteclin-F. Upjohn suggests that Albright's attorneys had ample time to investigate her claim because eleven months elapsed from the time Albright's cause of action accrued and the date the complaint was filed, and medical records were obtained from Dr. Kidd ten months before filing; Upjohn asserts that the intervening time period was sufficient to locate any other medical records or to confirm their nonexistence. Upjohn states that the information needed to identify the proper defendants in this case was not confusing or complex, and that the three attorneys who signed the complaint were experienced litigators who had prosecuted other tetracycline products liability actions. Thus, Upjohn urges, an adequate prefiling investigation could have been conducted without much difficulty. Upjohn submits that Albright's attorneys intentionally shifted both the burden of proof as well as the cost of product identification to the defendants. Upjohn claims that the failure of Albright's counsel to conduct reasonable prefiling inquiry has caused Upjohn unnecessary litigation expenses and resulted in a delay of discovery for the remaining parties.

Albright[4] contends that the facts of this case demonstrate that reasonable inquiry was made by her attorneys before the filing of the complaint. The circumstances relied upon by Albright in support of her contention that her attorneys met the standard of Rule 11 include the facts that eight tetracycline product liability suits were filed on the same day; that the medical records were old and often illegible; that the records of the deceased Dr. Wolf were lost; that efforts to determine the existence or nonexistence of Dr. Fruehwald's records were ongoing; that the records sought were from numerous doctors and were approximately 20–25 years old; and,

---

**3.** The district court first stated that the denial of the motion to amend was not a final and appealable order, but later vacated its original order and granted Upjohn's motion to amend to include a recitation of finality so that Upjohn could appeal the denial of the motion for sanctions under Fed.R.Civ.P. 11.

**4.** Although Albright is the named plaintiff-appellee, sanctions for a violation of Rule 11 are to be imposed upon the person who signed the complaint, a represented party, or both. Amended Rule 11 "should eliminate any doubt as to the propriety of assessing sanctions against the attorney." Advisory Committee Note, Fed. R.Civ.P. 11.

that Upjohn was known to be a leading defendant in such actions.[5]

Upjohn responds that merely because seven other similar cases were filed on the same day does not excuse Albright's attorneys from meeting the demands of Rule 11. Finally, Upjohn asserts that just because it had been a defendant in other tetracycline suits did not relieve Albright's attorneys of their obligation to investigate whether Upjohn was a proper defendant in the instant action.

■ Rule 11 was amended in 1983 "to reduce the reluctance of courts to impose sanctions.... by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." Advisory Committee Note, Fed.R. Civ.P. 11. "The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975 (E.D.Pa.1973). This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." *Id.* In *Kinee* the court found that the plaintiff's attorneys violated former Rule 11 by bringing suit challenging a particular lending practice against 177 mortgage lending institutions where 46 of the 177 institutions did not follow the disputed practice. While the actions of Albright's attorneys are not as egregious as those of the plaintiffs' attorneys in *Kinee*,[6] we nevertheless find that the prefiling investigation conducted by Albright's attorneys was insufficient because it failed to disclose that the claim against Upjohn was "well grounded in fact" within the meaning of Rule 11 or that there existed any likelihood that additional medical records would be located that could not have been found through reasonable inquiry prior to filing. Accordingly, we conclude that Albright's attorneys signed the complaint in violation of the requirements of Rule 11.[7] Consequently, we hold that the district court abused its discretion in denying the motion for sanctions.[8] *Westmoreland v. CBS*,

**5.** Albright also asserts that she was justified in pleading concert of action, alternate liability or joint enterprise theories of liability because such theories were "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," citing *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980) and *Hall v. E.I. Dupont de Nemours & Co.*, 345 F.Supp. 353 (E.D.N.Y.1972). In *Sindell*, an action against manufacturers of DES, a drug which is a synthetic compound of estrogen, the California Supreme Court adopted a theory of proportionate market share liability, under which each DES manufacturer could be held liable for the proportion of the judgment represented by its share of the drug market. The specific manufacturer of the DES which was ingested by the plaintiff's mother could not be identified. Unlike the plaintiff in *Sindell*, Albright knew the identity of three manufacturers of tetracycline-based drugs which she had ingested. Similarly, in *Hall* the court rejected a theory of industry-wide responsibility where the manufacturer of the injury-causing blasting cap was known. Albright admits that she abandoned this theory because "she finally found all the specific Defendants she could find...." (Appellee's Brief at 10.) As Upjohn notes, the basis of its Rule 11 motion was that Albright failed to reasonably investigate the *facts*, not that Albright failed to conduct a reasonable inquiry into the *law*. Whether or not Albright's assertion of joint enterprise liability was warranted by a good faith argument of existing law is not determinative of the question of whether she made reasonable prefiling inquiry into the facts to satisfy the affirmative duty imposed by Rule 11.

**6.** In *Kinee*, plaintiffs' attorneys sued every individual or lending institution listed in the Philadelphia phone book under the heading of mortgage broker or related headings.

**7.** The complaint was filed in September 1983, and the defendants' motion for summary judgment was filed on June 8, 1984. Albright did not file an amended complaint until August 24, 1984, when, as she states in her brief, "she finally found all the specific Defendants she could find...." Albright asserted her claim for liability against Upjohn with the knowledge that she had no factual basis for the claim, and continued to assert the claim long after it would have been reasonable to have dismissed it.

**8.** The dissenting opinion suggests that proper resolution of this issue lies under Fed.R.Civ.P. 41(a). However, dismissal thereunder is specifically limited to situations where a signed stipulation or a motion for dismissal has been filed, neither of which occurred here.

*Inc.,* 770 F.2d 1168, 1173–75 (D.C.Cir.1985) (discussion of standard of review.) Rule 11 expressly mandates the imposition of sanctions once a violation is found. "The selection of the type of sanction to be imposed lies of course within the district court's sound exercise of discretion." *Westmoreland* 770 F.2d at 1174. Accordingly, the order of the district court is reversed and the case is remanded for the imposition of sanctions.

GUY, Circuit Judge, dissenting.

Although dissenting, my difference with the majority is more one of degree than of kind. There is no disagreement that sanctions are now mandatory under Rule 11 *if* a violation is found. Our problem on review of this matter is complicated by the fact that the trial court made no findings but simply denied the motion for Rule 11 sanctions. If the court had made factual findings, these would be reviewable under the "clearly erroneous" standard. *Taylor and Gaskin, Inc. v. Chris Craft Industries,* 732 F.2d 1273 (6th Cir.1984). However, where the trial court makes no findings but simply concludes in an order that there is no Rule 11 violation, then that is a conclusion of law subject to *de novo* review. Notwithstanding that fact, however, I am convinced that the trial judge is in the best position to ascertain if sanctions are appropriate in any given case. We have to review on the cold record without any independent knowledge, as the trial judge has, of the cast of characters involved and the nuances of what was done or not done in this case. Rule 11 as now constituted allows the trial judge to do some fine tuning of the system and up the ante for violations of the rules without having a chilling effect on what attorneys may do in representing their clients.

I simply do not believe that we have enough evidence before us that we can sanction plaintiff's counsel in this case. Had the majority merely remanded for hearing at which factual findings could be developed, I would have readily concurred.[1]

I believe there is another resolution for this particular case, however, that would have made the defendant whole for its costs without the necessity of finding a violation of the rules. Rule 41(a) provides that after a party has filed either an answer or a motion for summary judgment a plaintiff may not dismiss as to that party without order of the court or by stipulation with all parties who have appeared. In this case, defendant Upjohn filed a summary judgment motion. Subsequent to the filing of that summary judgment motion, the plaintiff, rather than responding to the summary judgment motion, filed an amended complaint dropping Upjohn from the case. Under such circumstances, the plaintiff needed the court's permission to dismiss Upjohn, and Rule 41(a)(2) provides that such permission may be "upon such terms and conditions as the court deems proper." Upjohn was not a proper defendant in this case. In order to remove itself from the case, Upjohn had to spend money for costs and attorney's fees. It should be reimbursed for those costs. Where one of two innocent parties has to suffer, it should be the one who puts the wheels in motion, and in this case that was the plaintiff. Where the issue is dismissing as to an inappropriately named defendant, under the circumstances presented here, I would prefer to see resolution by using Rule 41(a)(2) as opposed to the imposition of a sanction unless it is clear that a violation of Rule 11 has occurred. I recognize, of course, that there are many situations in which this method of disposition would not be appropriate or applicable. However, it would appear to me to fit perfectly the situation with which we are here dealing.

---

1. The parties and the court are in agreement that the standard used in evaluating an alleged Rule 11 violation is an objective one. Therefore, a court does not need to find willfulness as such. However, the trial court's analysis of where the alleged offending party's conduct falls on a continuum ranging from simple negligence to willfulness will undoubtedly be part of the equation.