808 F.2d 285
 55 USLW 2423, 6 Fed.R.Serv.3d 737
 Ellen R. GLASER, administratrix of the Estate of Alan
Glaser, deceased and Ellen R. Glaser in her own right
v.
CINCINNATI MILACRON, INC., et al.
Appeal of Thomas W. HENDERSON, Appellant in No. 85-3483.
Appeal of Robert L. JENNINGS, Jr., Appellant in No. 85-3484.
Appeal of BASKIN AND STEINGUT, P.C., formerly Baskin and
Sears, P.C., Appellant in No. 85-3522.
 Nos. 85-3483, 85-3484 and 85-3522.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 20, 1986.
Decided Dec. 31, 1986.
 
 Arthur R. Miller (argued), Cambridge, Mass., Theodore Goldberg, Henderson & Goldberg, P.C., Pittsburgh, Pa., for appellants Thomas W. Henderson, and Robert L. Jennings.
 Philip Baskin (argued), Charles P. Falk, Baskin and Steingut, P.C., Pittsburgh, Pa., for appellant Baskin and Steingut, P.C.
 William M. Wycoff (argued), Deborah P. Powell, Thorp, Reed & Armstrong, Pittburgh, Pa., for appellees Allied Corp, American Petrofina, Inc., Cosden Oil & Chemical Co., Aminoil USA, Inc., Conoco, Inc., Crown Central Petroleum Corp., Donner-Hanna Coke Co., Harrison & Crossfield, Inc., Inland Steel Corp., Interlake, Inc., Lone Star Steel Co., Mobil Oil, Monsanto Co., North American Philips Corp., Northwest Industries, Inc., Pennzoil Co., Pepi, Inc., Republic Steel Corp., The Signal Companies, Inc., Skelly Oil Co., Standard Oil of California, Chevron U.S.A., Inc., Chevron Chemical Co., Texaco, Inc., Thompson-Hayward Chemical Co.
 James R. Miller (argued), Dickie, McCamey and Chilcote, P.C., Pittsburgh, Pa., for appellees J.T. Baker Chemical Co., Celanese Corp., Kerr-McGee Corp., Foremost McKesson, Inc., Marathon Oil Co., Tenneco, Inc., Phillips Petroleum Co., Technical Petroleum Co., Mutcher Chemical Co., Inc.
 Debra M. Coulson, Walter T. McGough, Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for appellees Standard Oil Co. of Indiana and its wholly owned subsidiary, Amoco Chemicals Corp.
 John W. Pollins, III, The Law Office of John W. Pollins, Greensburg, Pa., for amicus curiae, The Pennsylvania Trial Lawyers Assn.
 Before SEITZ, GIBBONS, and BECKER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Appellants Thomas Henderson, Robert Jennings and Baskin and Steingut, P.C. appeal the order of the district court assessing $165,069.85 in attorneys' fees against them pursuant to the preAugust 1983 version of Rule 11 of the Federal Rules of Civil Procedure. Subject matter jurisdiction in the underlying action was based on diversity of citizenship. Because appellants are no longer counsel for the plaintiff,[1] we have appellate jurisdiction under Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535 (3d Cir.1985).
 
 I.
 
 2
 During the summers of 1970 through 1972, Alan Glaser worked as an employee at a chemical plant operated by Cincinnati Milacron, Inc. in New Jersey. Glaser died on January 15, 1980 as a result of a chronic form of leukemia. On January 14, 1982, Ellen Glaser, Alan Glaser's widow, filed a wrongful death and survivor action, alleging that Alan was exposed to benzene when he worked for Cincinnati Milacron, and that this exposure caused his leukemia.
 
 
 3
 The complaint, filed by attorneys Henderson and Jennings one day before the statute of limitations expired, named as defendants ninety six corporations allegedly engaged in the manufacture of benzene and benzene-containing products (the "seller defendants") during 1970 through 1972 and five corporations identified as user defendants, Cincinnati Milacron, Inc. and its potential successors at the New Jersey plant. The complaint asserted claims of negligence, strict liability, and loss of consortium against the seller and user defendants. In addition, the complaint stated a separate cause of action against the seller defendants under a market share, enterprise or alternative theory of liability, alleging that certain exposures to benzene were unidentifiable, that the seller defendants represented substantially all of the benzene industry during the relevant time period, and that the seller defendants were liable in proportion to their market-share of the benzene industry.
 
 
 4
 After the complaint was filed, one of the user defendants sought to depose plaintiff's counsel in order to challenge the basis of the complaint under Rule 11. The district court agreed that the counsel could be deposed for the purpose of determining whether counsel had good grounds for the complaint. In this deposition, Jennings was questioned extensively about his prefiling investigation. Further information about Jennings' investigation of the case was set forth in Jennings' affidavit to the court. The appellees, seller defendants who were awarded attorneys' fees, do not challenge Jennings' account of his prefiling investigative efforts.
 
 
 5
 We now turn to a narration of the pertinent facts. In February 1981 Ellen Glaser approached Baskin and Sears, P.C. about bringing an action for her husband's death.[2] The law firm, however, apparently took no action in the case until Jennings joined the firm in August 1981 and was assigned the case under Henderson's supervision.
 
 
 6
 In his affidavit, Jennings claimed that he first reviewed Alan Glaser's medical record to confirm the diagnosis of chronic myelogenous leukemia. He further stated that he spoke with family members to confirm Ellen Glaser's statement that her husband had complained that he had been exposed to benzene when he worked for Cincinnati Milacron. He also reviewed the available toxicological record to establish that there was a causal connection between benzene exposure and the type of leukemia from which Alan Glaser suffered. Finally, Jennings explained that because Glaser was exposed to benzene in New Jersey, but subsequently moved to Pennsylvania, considerable legal research was focused on choice of law and statute of limitations questions under the law of the two states.
 
 
 7
 Jennings further explained in his affidavit that he telephoned Cincinnati Milacron on December 16, 1981. When an attorney from the corporation returned his call two days later, Jennings requested access to the records of chemicals used at the New Jersey plant during 1970 though 1972, or assistance in determining who had the records. He received no response to this request before filing the action.
 
 
 8
 During his deposition, Jennings stated that he was unable to identify the manufacturers of any benzene or benzene-containing chemicals that was supplied to the Cincinnati Milacron plant during the relevant time period. Jennings and Henderson therefore decided to rely upon an enterprise, market share or alternative liability theory of recovery from the seller defendants. Jennings reviewed Moody's, Standard & Poor's, the Oil, Paint & Drug Chemical Buyers Directory amd the Stanford Research Institute Directory of Chemical Producers to determine which companies had produced benzene or benzene-containing products on a national basis during the period of alleged exposure and the companies' successors. These companies were then named as defendants in the action.
 
 
 9
 On February 11, 1982, one of the seller defendants filed a motion to suspend the pleadings pending discovery limited to identifying the suppliers of benzene. The plaintiff joined in this motion on February 23. Three days later, the district court stayed the filing of answers, counterclaims, cross claims and third-party complaints and limited discovery to a sixty day period with regard to matters relevant to preliminary motions.
 
 
 10
 On March 12 the plaintiff served interrogatories on the user defendants. The seller defendants also served interrogatories on the user defendants. On April 20 the plaintiff entered into a stipulation with one of the user defendants, Interstab Chemical, Inc., for access to log books in which the chemical purchases dating from 1965 of the New Jersey plant were listed. After examining the log books, the plaintiff was able to identify seven of the seller defendants as the alleged suppliers of benzene-containing products to the plant.
 
 
 11
 By the middle of May 1982, sixty seven of the seller defendants had filed motions to strike the complaint pursuant to Rule 11 of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment. Several of these motions requested attorneys' fees. In response to these motions, the plaintiff agreed that all seller defendants but the seven likely suppliers should be granted summary judgment. By orders dated June 18, 1982 and July 8, 1982, the court dismissed eighty nine of the seller defendants "upon consent of the plaintiff."
 
 
 12
 On November 29, 1983, the district court issued a memorandum opinion, which held, among other things, that plaintiff's counsel had filed the complaint in bad faith in violation of Rule 11 and thus were liable to the eighty nine dismissed defendants for the costs incurred in defending themselves. The court rejected plaintiff's reliance on Sindell v. Abbott Laboratories, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, cert. denied sub nom. 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980), finding the "fact circumstances are so different ... that plaintiff's counsel in this case could not have believed that he was acting in good faith in naming all of the manufacturers of benzene during a particular period." After hearing additional testimony from plaintiff's counsel on January 13, 1984, the court reaffirmed its Rule 11 finding. The district court, after reviewing the affidavits submitted by defense counsel, awarded the dismissed defendants a total of $165,069.85 in attorneys' fees. This appeal followed.
 
 II.
 
 13
 Appellants contend that the district court's finding of a bad faith Rule 11 violation is clearly erroneous, that their procedural due process rights were violated in the imposition of fees, and that the amount of fees awarded was an abuse of the district court's discretion. Because of our disposition of the first issue, we find it unnecessary to reach appellants' other arguments.
 
 
 14
 This case is governed by the pre1983 version of Rule 11 because the lawsuit was filed in 1982.[3] Under this version of Rule 11, sanctions may be imposed against counsel only when the counsel's actions are found to be in subjective bad faith. See Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir.1985); Gieringer v. Silverman, 731 F.2d 1272, 1281 (7th Cir.1984); Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir.1980).
 
 
 15
 In one of the leading cases on the pre1983 Rule 11, the second circuit stated that a claim is brought in subjective bad faith when the claim is "entirely without color and made for the reasons of harassment or delay or for other improper purposes." Nemeroff v. Abelson, supra, 620 F.2d at 348, quoting Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977). For purposes of Rule 11, whether a claim is colorable depends on "whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." Id. Moreover, because courts were concerned that the imposition of attorneys' fees could discourage the initiation of potentially meritorious actions, districts courts were required to find "clear evidence" of bad faith prior to imposing such sanctions. See, e.g., Weinberger v. Kendrick, 698 F.2d 61, 80 (2d Cir.1982), cert. denied sub nom. Coyne v. Weinberger, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).
 
 
 16
 The district court concluded that the assertion by plaintiff's counsel of an enterprise or market share liability claim was in bad faith. We review this finding under the clearly erroneous standard. Perichak v. International Union of Electrical, Radio & Machine Workers, Local 601, 715 F.2d 78, 79 (3d Cir.1983). A district court's finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 98 L.Ed. 746 (1948). We may not reverse the district court, however, if its "account of the evidence is plausible in light of the record in its entirety ... even though ... [we] would have weighed the evidence differently." Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).
 
 
 17
 Although the district court agreed with plaintiff's counsel that enterprise liability was a colorable claim under either New Jersey or Pennsylvania law, it found counsel had acted in bad faith in asserting the claim because they had not conducted a good faith investigation into whether specific suppliers could be identified. First, the court found that the telephone call to Cincinnati Milacron was not a good faith effort because Jennings did not place the call until he had been working on the case for over four months, because he did not attempt to contact any of Cincinnati Milacron's successors, and because he did not follow up the request. Second, the court found that there were other alternatives for investigation such as contacting the workers at the plant. It rejected counsel's explanation that because the plant was non-union he did not think he could locate any sympathetic workers. Third, the court found that counsel had improperly used the enterprise liability theory as a discovery tool. Finally, the court suggested that since counsel began working on the case six months before the complaint was filed, he could have filed a state action against the employer and obtained the records necessary to identify the suppliers.
 
 
 18
 We agree with the district court that the record shows that plaintiff's counsel did not ascertain whether they would be able to identify the specific suppliers of benzene to the New Jersey plant before filing the complaint. We also agree that the market share and enterprise theories of liability as they have been developed thus far are not available once a specific supplier of a product has been identified. See, e.g., Prelick v. Johns-Manville Corp., 531 F.Supp. 96 (W.D.Pa.1982); Abel v. Eli Lilly and Co., 418 Mich. 311, 343 N.W.2d 164, cert. denied sub nom. E.R. Squibb & Sons Inc. v. Abel, 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984). In order to find bad faith under the preamendment version of Rule 11, however, the district court must find that the claims asserted were entirely without merit.
 
 
 19
 The market share and enterprise theories of liability have been developed by the courts in response to the inability of plaintiffs to recover under traditional tort law when they are unable to identify the actual supplier of the product that caused the harm. See, e.g., In re "Agent Orange" Product Liability Litigation, 597 F.Supp. 740, 823-24 (S.D.N.Y.1984). These theories are a new development in tort law, and the requirements for a finding of liability under these theories have not been agreed upon by the courts. See id. at 820-28 (discussing the approaches various jurisdictions have taken toward these theories). Indeed, although there have been several lower court decisions discussing claims brought under the market share and enterprise liability theories,[4] neither the New Jersey nor the Pennsylvania Supreme Court have ruled on the viability of such claims. We cannot say it was clear on the date the action was commenced whether either state would adopt the market share or enterprise liaility theories.
 
 
 20
 In order to recover under these theories, the courts have generally required plaintiffs to show that, through no fault of their own, they are unable to identify a specific tortfeasor and that they have joined a sufficient number of defendants that it is likely that one of the defendants actually supplied the goods. See, e.g., In re "Agent Orange" Product Liability Litigation, supra, 597 F.Supp. at 823-28; Sindell v. Abbott Laboratories, supra, 163 Cal.Rptr. at 145, 607 P.2d at 937; Abel v. Eli Lilly and Co., supra, 343 N.W.2d at 173-74. But see Martin v. Abbott Laboratories, 102 Wash.2d 581, 600-09, 689 P.2d 368, 380-83 (1984) (plaintiff only has to sue one defendant that manufactured the product). Once the plaintiff shows that exposure to the product caused the injury, that the identity of the producer is unknown, and that a substantial number of the producers are in front of the court as defendants, the defendants are held liable unless they can show that they could not have produced the product that injured the plaintiff. See, e.g., Sindell v. Abbott Laboratories, supra, 163 Cal.Rptr. at 145, 607 P.2d at 937.
 
 
 21
 In this case, Jennings named as defendants all manufacturers of benzene during 1970 though 1972. The plaintiff herself had no information regarding who the suppliers were. Moreover, it was not unreasonable for counsel to believe that the user defendants would not have records of their suppliers dating back twelve years. Under the facts known to Henderson and Jennings at the time the suit was filed, they could have reasonably concluded that "facts supporting the claim might be established," and therefore, their assertion of a claim against the eighty nine defendants was not entirely without color.
 
 
 22
 Counsel had only six months to investigate the host of medical and legal issues raised in this case. Indeed, the complaint was filed one day before the statute of limitations expired. Counsel may have been able to pursue some other alternatives to identify the suppliers within the six months, as the district court suggested. We cannot agree with the district court, however, that the failure to do so supports a finding of subjective bad faith under the preamendment version of Rule 11.
 
 
 23
 Finally, the district court relied on Kinee v. Abraham Lincoln Federal Savings & Loan Ass'n, 365 F.Supp. 975 (E.D.Pa.1973), to justify the imposition of attorneys' fees. In that case, the plaintiff brought a class action against Philadelphia mortage lenders, alleging that the escrow method used by the lenders violated federal antitrust laws. Plaintiff's counsel sued every individual or lending institution listed in the Philadelphia telephone book under the mortgage broker and related headings. 365 F.Supp. at 982. The district court imposed upon plaintiff's counsel the attorneys' fees incurred by those lending institutions that were dismissed because they did not use the allegedly illegal method. Id. at 983.
 
 
 24
 We find the district court's analogy to Kinee unpersuasive. First, the trade books relied upon by Jennings identified those chemical companies that produced benzene or benzene-containing products during the relevant time period. The listings in the telephone book, on the other hand, provided no information to Kinee's counsel regarding the practices of the defendants. Second, in Kinee, the attorneys made no effort to contact any of the defendants before filing suit. Information as to their practices, moreover, might have been simple to ascertain. In this case, however, Jennings did approach one of the user defendants for information regarding the suppliers of benzene. Finally, one jurisdiction that has adopted a version of enterprise liability permits the plaintiff to allege both traditional product liability and enterprise liability causes of action in the complaint, explaining that the "scrutiny of claims is accomplished by discovery procedures, pretrial conferences and summary judgment motions." Abel v. Eli Lilly and Co., supra, 343 N.W.2d at 175.
 
 
 25
 There is simply no evidence that, given the attorneys' reliance on the enterprise theory of liability, the investigation before the filing of the complaint was so lacking as to constitute subjective bad faith.[5] For the foregoing reasons, and based on a review of the entire record, we are left with the "definite and firm conviction that a mistake has been committed" on the issue of whether the appellants filed the complaint in bad faith. We therefore conclude that appellants' conduct prior to filing the complaint does not rise to the level of a wilful violation of the preamendment version of Rule 11.
 
 III.
 
 26
 Accordingly, the judgment of the district court assessing attorneys' fees against the appellants will be reversed.
 
 
 
 [1]
 The district court entered an order on July 5, 1984 permitting the appellants to withdraw from the case
 
 
 [2]
 Baskin and Steingut, P.C., appellant, is the successor to Baskin and Sears, P.C. The individual appellants, Henderson and Jennings, were with Baskin and Sears when the action was filed
 
 
 [3]
 Prior to the amendments to Rule 11 in 1983, Rule 11 provided in part:
 The signature of an attorney constitutes a certificate by him that he has read the pleading, that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with the intent to defeat the purposes of this rule, it may be stricken as sham and false.... For a wilful violation of this rule, an attorney may be subjected to appropriate disciplinary action.
 
 
 [4]
 See Namm v. Charles E. Frosst & Co., 178 N.J.Super. 19, 427 A.2d 1121 (A.D.1981) (rejecting enterprise liability); Ferrigno v. Elly Lilly and Co., 175 N.J.Super. 551, 420 A.2d 1305 (1980) (accepting market share liability as a viable claim); Burnside v. Abbott Laboratories, 351 Pa.Super. 264, 505 A.2d 973 (1985) (rejecting the contention that a defendant that shows it did not supply the product can be held liable under a market share theory of liability)
 
 
 [5]
 We express no opinion as to whether this limited investigation would be sufficient under amended Rule 11, which explicitly requires an attorney to conduct a reasonable investigation before filing a complaint