Basil William **WHITTINGTON**, Kenneth
E. Thorne, Kenneth Wroblewski, and
Alfred A. Plants, Plaintiffs,

v.

The ʻOHIO RIVER COMPANY, et
al., Defendants.

No. 86–57.

United States District Court,
E.D. Kentucky,
Covington Division.

March 24, 1987.

William P. Schroeder, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for movants, The Ohio River Co., et al.

Philip Taliaferro III, Taliaferro & Mann, Covington, Ky., for respondent, Meredith L. Lawrence.

## OPINION AND ORDER

BERTELSMAN, District Judge:

This matter is before the court on motions pursuant to F.R.Civ.P. 11, filed by the defendants following a voluntary dismissal of the complaints by the plaintiffs.

In addressing these motions this court has occasion for the first time to discuss in depth the requirements of Rule 11 and the tensions it creates between the advocate's duty to his or her client and the obligations imposed by the rule.

## FACTS

The respondent, Meredith L. Lawrence, is an attorney who has been admitted to the bar approximately eight years. He has specialized in maritime law and has many Jones Act and maritime cases on the docket of this court. In his extensive admiralty practice he has become acquainted with many rivermen who work for the various towboat companies which ply the Ohio River.

Mr. Lawrence was approached by five seamen who were or had been longtime employees of the defendant Ohio River Company and members of the crew of various of its vessels. Each of these men had received letters from their national union advising them that the union had discovered that many of its members had been exposed to asbestos on river vessels over the years and some had become afflicted with asbestosis. The letter advised them that they might want to retain an attorney to investigate filing a suit or claim for them if they suspected they might have this dread disease.

The men in question came to Mr. Lawrence to look into this possibility for them. They all complained of difficulties in breathing and other symptoms which led Lawrence to suspect that they might have asbestosis. Lawrence consulted a reputable physician who specialized in pulmonary diseases. The physician, after examining x-rays of each man, determined that four of them had asbestosis, probably occupationally induced. He found that the other one did not.

Lawrence filed suit for those men in whom asbestosis had been confirmed. He did not file for the other one. In these suits Lawrence named the Ohio River Company *in personam*. The theory against it was that the company had not provided the plaintiffs with a safe place to work and had subjected them to dangerous and unseaworthy conditions by requiring them to work on vessels where they were exposed to friable asbestos. Lawrence had not inspected any of the company's vessels or performed tests on any of them to see if there existed friable asbestos. Such tests are extremely expensive and time-consuming.

Lawrence named not only the Ohio River Company as a defendant but also a parent company and each of the sixteen vessels in its fleet *in rem*. He never caused any of the vessels to be arrested pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, however.

After some preliminary discovery and motion practice, Lawrence moved the court for a voluntary dismissal without prejudice under F.R.Civ.P. 41(a), on the ground that the actions were too expensive to pursue. The defendants objected unless the court imposed as a condition that its costs and attorney's fees be paid. The court granted the motion to dismiss without prejudice and directed the defendants to seek its fees through Rule 11.

At the evidentiary hearing on these motions, Lawrence testified that his reason for naming the vessels *in rem* was that he wished to give his clients some additional leverage in case the Ohio River Company went bankrupt, as many other towboat companies have. He testified further that he had worked extensively on the river before going to law school and that every towboat he had ever seen had asbestos insulation. Therefore, he was certain the Ohio River Company's boats did also, although he could not be sure that the asbestos was friable on any of the boats without scientific testing.

Lawrence also testified that he had named all of the vessels in defendants' fleet, even though the plaintiffs had not served on the crew of every vessel, because they were on and off all the vessels as barges were exchanged, or otherwise in the course of their duties and even momentary exposure to airborne asbestos fibers could have induced the disease. The plaintiffs filed affidavits verifying that they had been on all the vessels at various times.[1]

---

1. Defendants contend that these affidavits were an afterthought. Defendants do not contest

Lawrence also testified that the reason he had decided to advise his clients to abandon the suits was because after getting into the litigation he realized that it would be too expensive to pursue and he felt that his clients would be better off joining one of the many asbestos class actions that are now pending in various courts.

Defendants contend that, even taking this testimony at its face value, Lawrence failed to meet the standards required by Rule 11 and sanctions must be imposed.

## WHAT RULE 11 REQUIRES

The principal problem facing the federal courts in recent years has been the "litigation explosion." Filings have doubled and redoubled over the last two decades. Judges and courthouses have been multiplied to the limit. The Judicial Conference of the United States and the Advisory Committee on the Federal Rules of Civil Procedure perceived that frivolous litigation was a major component of burgeoning case filings. Therefore, in 1983, after due course, a stringent amendment to F.R.Civ.P. 11 was adopted with the purpose of providing for imposition of meaningful sanctions on attorneys asserting frivolous claims or defenses in federal litigation.

Formerly Rule 11 required in essence that attorneys act with "good faith" in representing their clients. The test of good faith was mainly subjective.[2]

The new Rule 11 puts a much greater burden on the attorney to assure that assertions of fact and law are not frivolous. Under the amended Rule the signature of an attorney on a pleading, motion or other paper filed in federal court constitutes a certification that "to the best of his knowledge, information and belief, *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose...." (Emphasis added)[3]

their accuracy, however. Even if respondent's initial investigation did not disclose these facts, the causative element for Rule 11 sanctions would be missing if the facts were as subsequently stated in the affidavits. *Cf. Continental Air Lines v. Group Systems International, Ltd.,* 109 F.R.D. 594, 597 (C.D.Cal.1986) (Supreme Court decision overlooked, but it only reinforced previous law).

2. The entire text of former Rule 11 reads:
"Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. *The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.* If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may

be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted." (Emphasis added).

3. The entire text of amended Rule 11 reads:
"Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. *The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.* If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to

After a period of relative inactivity, which was apparently necessary for the bench and bar to become aware of the amended Rule, the courts began to use it with enthusiasm. It was held that sanctions were mandatory if the standard of the Rule was violated.[4]

Courts imposed severe sanctions on counsel, amounting to several thousand dollars in some cases.[5] In an article by a U.S. District Judge, it was suggested that the rule implied an obligation of "candor" on counsel under which an attorney was required to point out to the court the weaknesses in his or her argument.[6] This author-judge imposed serious sanctions on counsel in a case on his own docket for failing to cite adverse authority and arguments contrary to his interpretation of certain cases, thus violating the obligation of "candor."[7]

Literally hundreds of Rule 11 opinions have been published, and undoubtedly there have been more hundreds of unpublished opinions. The background and history of amended Rule 11 and its implementation have been thoroughly explored in several recent articles, two of which are particularly informative.[8]

As these articles point out, some commentators and judges are beginning to have second thoughts about the use of Rule 11. Although much frivolous litigation is undoubtedly being curtailed, the fears of the Advisory Committee that the rule might result in a chilling of the vigorous advocacy that has always been the hallmark of the American lawyer are also being realized.

Further, the time saved by deterring frivolous litigation tends to be offset in hearings on Rule 11 motions and counter-motions. The prophetic caveats of the Advisory Committee on these points are worth quoting:

> "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

\* \* \* \* \* \*

> "To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only

the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." (Emphasis added.)

4. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985); *Albright v. Upjohn Company*, 788 F.2d 1217, 1222 (6th Cir.1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985).

5. *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F.Supp. 657 (S.D.N.Y.1984) ($10,000); *City of Yonkers v. Otis Elevator Co.*, 106 F.R.D. 524 (S.D.N.Y.1985) ($5,000); *Continental Airlines, Inc. v. Group Systems International Far East, Ltd.*, 109 F.R.D. 594 (C.D.Cal.1986)

($5,000); *Olga's Kitchen v. Papo*, 108 F.R.D. 695 (E.D.Mich.1985) ($22,677.46); *Florida Monument Builders v. All Faiths Memorial Gardens*, 605 F.Supp. 1324 (S.D.Fla.1984) ($25,000).

6. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985) (hereinafter "Schwarzer").

7. *Golden Eagle Distributing Corporation v. Burroughs Corporation*, 103 F.R.D. 124 (N.D.Calif. 1984), *rev'd.* 801 F.2d 1531 (9th Cir.1986).

8. Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment*, 74 Georgetown L.Rev. 1313 (1986) (hereinafter "Nelken"); Note, *Plausible Pleadings: Developing Standards for Rule 11 Sanctions*, 100 Harvard L.Rev. 630 (1987) (hereinafter "Note, *Plausible Pleadings*"). An exhaustive treatment of the subject may also be found in *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558 (E.D.N.Y.1986).

by leave of court, and then only in extraordinary circumstances."

Unfortunately, "satellite litigation over the imposition of sanctions" seems more difficult to limit than the Advisory Committee envisioned. The resolution of almost every Rule 11 motion involves affidavits at the very least. In the case at bar, the court found it necessary to allow discovery and to hold an evidentiary hearing. The court has already been advised that, if this original Rule 11 motion is denied, a counter Rule 11 motion will be filed based on the lack of merit of the original motion. I suppose a counter-countermotion will be forthcoming if the countermotion is denied.

Further, as the articles cited earlier in this opinion point out, excessive use of Rule 11 by the courts is contrary to the liberal pleading philosophy which is the cornerstone of the Federal Rules of Civil Procedure. Those rules contemplate the development of the complaint's original allegations by discovery.

■ This court agrees with the judges and scholars who caution that application of Rule 11 has been overdone and some retrenchment is in order.[9] Certainly from its own observation, the court knows that many trial lawyers are in a state of consternation concerning the amended Rule and are at a loss as to how to represent their clients effectively in an atmosphere where an unsuccessful claim may result in ruinous sanctions against them.

Nevertheless, the court recognizes that Rule 11 is here to stay. Although certainly not a panacea, if used with restraint and common sense, it is a long-needed device for curtailing the flood of ill-conceived, meritless litigation that has given our legal system a bad name in recent years.

The bar must become familiar with Rule 11 and what it requires of an advocate. It has been too slow in doing so, with the result that many attorneys have been caught off guard when what they believed was aggressive but proper representation of their clients brought sanctions down on their unwary heads.

One problem has been that the text of Rule 11 is abstract as any such statute must be. So also are most of the cases and articles interpreting the rule. The bar has been afforded little guidance concerning the specific obligations imposed by the rule. Certainly, this opinion will not totally solve this problem, but it is an effort to provide concrete guidelines to the bar and thus make Rule 11 both fairer and more efficient in achieving its laudable purposes.

■ A synthesis of the legislative history, commentary and cases reveals that Rule 11 requires the following:

1. **READING THE DOCUMENT.** If an attorney signs a document he must have read it.

2. **FACTUAL INQUIRY.** An attorney must make an investigation of the facts *before* filing a claim or defense.[10] An attorney has not made a "reasonable inquiry" concerning the facts, if he has not made any inquiry, or if he has relied only on his client,[11] when time permitted him to make a further investigation. A defendant must not be joined, or claim asserted against a defendant merely in the hope that discovery will turn up something against that defendant.[12] The cost of determining whether a defendant should be named in the action must be borne by the plaintiff

---

9. *See* Authorities cited in note 8, *supra.*

10. Schwarzer, *supra* note 6 at 187; *Continental Air Lines, Inc. v. Group Systems International Far East, Ltd.,* 109 F.R.D. 594, 597 (C.D.Cal. 1986); *Foster v. Michelin Tire Corp.,* 108 F.R.D. 412, 414 (C.D.Ill.1985).

11. *Continental Air Lines, Inc., supra;* Fed.R. Civ.P. 11, advisory committee note; *Southern*

*Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783 (5th Cir.1986); Schwarzer, *supra* note 6 at 187. Also, unfavorable facts obtained from the client must be considered, *Continental Air Lines, Inc., supra.*

12. *City of Yonkers,* 106 F.R.D. at 525; *Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252, 262 (E.D.Mich.1985).

and his attorney before the suit is filed.[13] The burden cannot be shifted to a defendant to prove himself out of the case after filing. Thus, naming all of the manufacturers of a certain kind of drug, when a reasonable inquiry would have disclosed that the plaintiff only took the products of a few members of the industry, will result in mandatory sanctions.[14]

Before a defendant is named or a claim (such as a RICO claim) asserted against a defendant, the attorney's file should contain facts admissible in evidence, or at least facts indicating the probable existence of evidence,[15] implicating that defendant or supporting that claim. The shotgun complaint is out.[16] Attorneys must take this principle to heart and start complying with it.

Many attorneys are concerned that in some cases the facts are in the control of the prospective defendants and are unavailable without the muscle provided by discovery. The careful advocate justifiably fears leaving a prospective defendant out and later having the parties who were sued point the finger at an empty chair after the statute of limitations has run.

In such a situation, an attorney would be well advised to make as thorough an investigation as possible, perhaps even writing to the prospective defendants requesting access to their files, or asking for their side of the story. If the door is slammed in his face, he will have documented that he made what investigation he could. The Advisory Committee note states that lack of time

before the statute of limitations runs and inaccessability of required information should be considered in deciding whether Rule 11 has been violated.

**3. LEGAL INQUIRY.** An attorney must perform reasonably sufficient legal research *before* filing a claim or defense.[17] An attorney has not made a reasonable inquiry as to whether a claim or defense is warranted by existing law if he or she hasn't done any research. An attorney cannot have a reasonable belief that a claim or defense is warranted by a good faith argument for the "extension, modification or reversal of existing law," unless he or she knows what the existing law is.[18] Counsel's interpretation of the law, formulated after sufficient research, must be non-frivolous, that is, reasonable as evaluated by a competent attorney.[19]

Flights of legal fancy and optimistic speculation in complaints and answers are improper under the amended rule. Not every tort claim is a punitive damages claim or involves the tort of outrage. Not every commercial claim is a RICO claim. Not every § 1983 police brutality claim should include the Governor, the Commissioner of Police, or all of the individual city council members. Some claims are clearly barred by *res judicata*.[20] Some defendants are clearly immune from suit.[21] Some defenses have no application to the case. A shotgun answer is as improper as a shotgun complaint.

If a recent controlling court decision is fatal to a claim, sanctions will be imposed,

---

13. *Foster,* 108 F.R.D. at 415; *Southern Leasing Partners, Ltd.,* 801 F.2d at 786. *See* Nelken, *supra* note 8 at 1323.

14. *Albright v. Upjohn Co.,* 788 F.2d 1217, 1222 (6th Cir.1986).

15. Schwarzer, *supra* note 6 at 187.

16. "Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something. If Rule 11 is to mean anything, and we think it does, it must mean an end to such expeditionary pleadings. '[T]his "shotgun approach" to pleadings, ... where the pleader heedlessly throws a little bit of everything into his complaint in the

hopes that something will stick, is to be discouraged.' *Rodgers v. Lincoln Towing Service, Inc.,* 596 F.Supp. 13, 27 (N.D.Ill.1984), *aff'd.,* 771 F.2d 194 (7th Cir.1985)." *Southern Leasing Partners, Ltd.,* 801 F.2d at 788.

17. *Foster,* 108 F.R.D. at 415.

18. *In re TCI, Ltd.,* 769 F.2d 441 (7th Cir.1985); Nelken, *supra* note 8 at 1342.

19. *See* notes 25 and 26, *infra.*

20. *See Southern Leasing Partners, Ltd., supra.*

21. *Davis v. Crush,* 646 F.Supp. 1192 (S.D.Ohio 1986) (judicial immunity).

whether the attorney actually found that case or not, if a reasonably competent attorney would have found it.[22]

Although Rule 11 does not literally require it, it would be my advice to all attorneys to be sure that the file contains at least a skeleton memo outlining concretely, not just abstractly, the legal basis for every claim or defense. It should apply the law disclosed by reasonably extensive legal research to the facts disclosed by a reasonably adequate factual investigation. The analysis should be that of a reasonably competent attorney admitted to federal practice.

**4. OBJECTIVE STANDARD.** Whether or not a "reasonable inquiry" into the facts or law has been made is to be determined by the court objectively. An attorney's subjective good faith is irrelevant.[23] As Judge Joiner has pointed out:

"By focusing upon the investigative efforts undertaken by the attorney, rather than seeking to scrutinize the unfathomable processes of his mind, the court is better able to apply the strictures of Rule 11 objectively and fairly." [24]

The ultimate test is: "If judged by an objective standard, a reasonable basis for the position exists in both law and fact at the time that the position is adopted, then sanctions should not be imposed." [25] The standard imposed is that of a competent attorney admitted to the bar of the federal court.[26]

**5. IMPROPER PURPOSE.** Some courts have held that, if there is a proper factual and legal basis for asserting a claim or defense, the "improper purpose" requirement of Rule 11 is not violated.[27] Other authorities are to the effect that the "improper purpose" provision is a subjective requirement and that even meritorious litigation positions, if taken for purposes of harassment or other improper reason can violate Rule 11.[28] This court holds that the latter is the better view. Indeed, it seems required by the plain meaning of the text of Rule 11. Therefore, whether or not a pleading was interposed for an improper purpose involves a subjective standard of bad faith.

**6. CONTINUING OBLIGATION.** An attorney must not only conduct a reasonable investigation into the facts and law before filing but must also continually review and reevaluate his position as the case develops. He must abandon claims or defenses as soon as it becomes apparent that it is unreasonable to pursue them.[29]

**7. MANDATORY SANCTIONS.** If Rule 11 has been violated, sanctions are mandatory, although the nature and amount of the sanctions are within the discretion of the trial court.[30]

**22.** *Continental Air Lines v. Group Systems International Far East Ltd.,* 109 F.R.D. 594 (C.D.Cal. 1986).

**23.** *Foster,* 108 F.R.D. at 415; cases in notes 25 and 26, *infra.* Of course, bad faith is relevant in an "improper purpose" analysis and in determining the amount of sanctions.

**24.** *Mohammed v. Union Carbide Corporation,* 606 F.Supp. at 261.

**25.** *Golden Eagle Distributing Corporation,* 801 F.2d at 1538; *Cf. Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2nd Cir. 1986); *Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 567 (E.D.N.Y.1986); *Indianapolis Colts v. Mayor and City Council of Baltimore,* 775 F.2d 177 (7th Cir.1985); and *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986).

**26.** *Zaldivar,* 780 F.2d at 830. In practice this objective standard will unavoidably tend to be somewhat inconsistent in application because of the differing views of individual federal judges. *See* Note, *Plausible Pleadings, supra* note 8 at 638 ff.

**27.** *Zaldivar,* 780 F.2d at 832; *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2nd Cir.1985).

**28.** *In Re Ronco,* 105 F.R.D. 493, 498 (N.D.Ill. 1985); *See* Note, *Plausible Pleadings, supra* note 8 at 642–43; Nelken, *supra* note 8 at 1320–21, 1331.

**29.** *Woodfork v. Gavin,* 105 F.R.D. 100, 106 (N.D. Miss.1985); *Southern Leasing Partners, Ltd.,* 801 F.2d at 788.

**30.** *Eastway,* 762 F.2d at 254, n. 7; *Albright, supra;* Nelken, *supra* note 8 at 1321ff.

In summary, the Rule 11 principles applicable to this case are:

1. An attorney must READ every paper before signing it.

2. He must make a reasonable pre-filing investigation of the FACTS.

3. He must research the LAW, unless he is certain he knows it.

4. The law as applied to the facts must REASONABLY WARRANT the legal positions and steps he takes. If existing law does not warrant these positions, a plausible argument for the extension of the law to the facts of the case is required.

5. It must be demonstrated, as the basis of pre-filing investigation and research, that there is a REASONABLE BASIS to name each defendant named, and to support each claim asserted. The shotgun complaint or answer, filed in the hope that discovery will produce the justification for it, is improper.

6. The adequacy of an attorney's investigation, research and legal analysis will be evaluated by the court under an OBJECTIVE STANDARD, namely, whether the attorney acted as a reasonably competent attorney admitted to federal practice. Except as to improper purpose, subjective good faith is not a defense to Rule 11 sanctions. A pure heart but an empty head is of no avail.[31]

7. The attorney must CONTINUALLY RE-EVALUATE his positions and abandon them if they are no longer reasonably warranted.

8. An attorney must not have an IMPROPER PURPOSE, such as harassment or intimidation, in naming any defendant, asserting any legal position or taking any legal step.

9. If an attorney violates Rule 11 the imposition of some sanction is MANDATORY, although the nature and extent of the sanction is discretionary with the district court.

**31.** Schwarzer, *supra* note 8 at 187.

## APPLICATION OF RULE 11 PRINCIPLES TO THIS CASE

 Applying Rule 11 principles to this case, the court concludes that respondent Lawrence did not violate the standards of the rule, although his zeal for his clients could have been more restrained without being less effective.

Lawrence read the complaints prior to signing them. He conducted a pre-filing factual investigation which the court, applying an objective standard, finds was reasonably adequate. Before filing the lawsuits, Lawrence had obtained an opinion admissible in evidence from a qualified expert that the four plaintiffs had asbestosis. He knew, and it is not denied, that there was asbestos on all river towboats, including the defendants'. The only thing he might have done further was to request the defendants to make their boats available for scientific testing prior to his filing suit. Since this would have involved taking the vessels out of service, he would reasonably anticipate that the defendants would refuse. Indeed, such a request would have been most unorthodox, and the court finds it was not reasonably required.

With the evidence available to him, then, Lawrence was reasonable in his conclusion that somewhere in the course of their employment for the defendants, during which they were on and off all these vessels, plaintiffs had been exposed to dangerous asbestos, as a result of which they had contracted asbestosis. The fact that all four men, who had worked for the same employer, had contracted asbestosis raised this inference.

 Further, the court finds that the actions taken by Lawrence, including naming the vessels as defendants *in rem* was warranted under the existing law, as required by Rule 11. A party may name a vessel *in rem* if he has a maritime lien on it.[32] He has such a maritime lien if he has

**32.** 1B *Benedict on Admiralty* § 23; G.Gilmore & C. Black, *The Law of Admiralty* § 9–19 (2d ed. 1975).

been injured by an unseaworthy condition of the vessel.[33]

▇ The defendant owed all these men as seamen employed by it the duty to assure that they were provided a safe place to work on seaworthy vessels. "Both the ship and shipowner are liable to seamen for injuries caused by unseaworthiness."[34] Certainly, a vessel with friable asbestos is unseaworthy with respect to its crew. This duty would also run to crews of other vessels in the same fleet who must come aboard.[35]

Further, it is a common practice in maritime actions to name the offending vessel or barges *in rem*, even though obtaining a maritime lien is not strictly required to ensure an enforceable judgment.[36]

In addition, the court finds that the respondent did not have an improper purpose of harassing the defendants in pursuing the course that he did. This is indicated by the fact that he went to the expense of having each plaintiff's chest X–Rays medically evaluated. He did not file suit for the man who was not diagnosed as having asbestosis. He did not actually cause any of the vessels named *in rem* to be arrested or detained in any way. Finally, he continually re-evaluated the litigation, and dismissed it when it became impracticable to pursue it, rather than letting it drag on and attempting to force some kind of settlement in return for dismissing it.

All of this indicates to the court that the respondent was motivated by a desire to represent his clients as vigorously as the law allowed, and not by a desire to harass or intimidate the defendants.

In the last analysis, the court believes that to impose sanctions on the respondent under the circumstances reflected in this record would have a chilling effect on the "enthusiasm and creativity" of the practicing bar. This would violate the spirit of the rule as reflected in the caveat of the Advisory Committee quoted earlier. As I have pointed out above, many commentators and judges, including this one, are concerned about Rule 11 overkill and its effect on effective advocacy. This opinion already having gone on too long, I will refer the reader to the excellent opinion by Judge Weinstein, in which he eloquently expounds his views on this subject.[37]

Therefore, the court having been sufficiently advised and for reasons stated herein,

IT IS ORDERED that defendants' motions for sanctions under F.R.Civ.P. 11 be, and they are, hereby DENIED.

▇

---

**33.** G. Gilmore & C. Black, *supra*, 622, 628–29 (2d ed. 1975). A Jones Act claim may not be brought *in rem*. *Id.* But unseaworthiness claims are typically joined with Jones Act claims by seamen. G. Gilmore & C. Black, *supra* at 383.

**34.** *Baker v. Raymond International, Inc.*, 656 F.2d 173, 181 (5th Cir.1981) (citing many authorities); G. Gilmore & C. Black, *supra* at 384.

**35.** *Cf. Seas Shipping Co. v. Sierachi*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (longshoreman).

**36.** During the hearing of these motions, the court recalled that counsel for defendants, a prominent admiralty specialist in this part of the country, and an *adjunct* professor of admiralty law at the local law school had done just that in a collision case in which there was no doubt that the defendant was solvent. *Humphrey v. Morehead Marine Service, Inc.*, (E.D.Ky. at Covington, Civil Action No. 83–74). *See e.g., Vallot v. Central Gulf Lines, Inc. and S.S. Green Forest*, 641 F.2d 347 (5th Cir.1981).

**37.** *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558 (E.D.N.Y.1986); *See also* authorities in note 8, *supra*. While not in agreement with all the views contained in this opinion, I believe its overall cautious approach to Rule 11 is quite valuable and much needed.