**MIKE OUSLEY PRODUCTIONS, INC., et al., Plaintiffs,**

v.

**Art CABOT, et al., Defendants.**

**Civ. A. No. CV187–208.**

United States District Court,
S.D. Georgia,
Augusta Division.

Feb. 26, 1990.

Charles M. Thompson and Gary D. Hooper, Thompson, Griffis & Hooper, Birmingham, Ala., and Victor Hawk, Hawk & Hawk, Augusta, Ga., for plaintiffs.

David E. Hudson and Richard R. Mehrhof, Jr., Allgood & Childs, Augusta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Plaintiff, Mike Ousley, initially filed his complaint in this case on November 18, 1987, against the counterclaimant, Ric Hogan, along with Dave Hogan, WJBF–TV and Art Cabot, an agent for WJBF–TV. Plaintiff was the producer of a teen dance program and negotiated with Art Cabot on behalf of WJBF–TV for the broadcast of his teen dance program in Augusta, Georgia. Plaintiff claimed that he had a contract with WJBF–TV for the broadcast of his television program. In addition, plaintiff alleged that he had conducted negotiations with Dave and Ric Hogan, as owners of "Bentley's Lounge", for the video taping of his television program in said lounge. Plaintiff's lawsuit was based upon an alleged breach of contract and tortious interference with a contractual relationship. However, the only claim which reached the jury was misappropriation of a business idea. The jury returned a verdict for the defendants.

Prior to the trial of this case, plaintiff dismissed his claims against Ric Hogan when it became apparent to plaintiff that "should Ric Hogan remain in the lawsuit through trial, that most likely a judgment of not guilty would be entered on his behalf." The only aspect of this case remaining for the Court's consideration is a counterclaim filed by Ric Hogan for Rule 11 sanctions in the form of costs and attorneys' fees. On January 30, 1990, immediately following the close of the trial, the Court heard oral arguments with respect to Ric Hogan's claim for Rule 11 sanctions. Both parties were given an additional ten days from January 30, 1990, to file briefs with the Court in support of their respective positions. Having heard the oral arguments and reviewed the briefs submitted by both parties, I will now rule on Ric Hogan's motion for Rule 11 sanctions.

Originally enacted in 1937, Rule 11, as amended in 1983, currently provides in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.[1] The 1983 amendment to Rule 11 resulted from a growing concern by the rulemakers over misuse and abuse of the litigation process. Fed.R.Civ.P. 11 advisory committee notes. The purpose of the amendment was to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions. *Id.* The pre–1983 Rule 11 prescribed a subjective bad faith test for determining when an attorney had violated the Rule. "Amended Rule 11 changed the rule by requiring that the attorney's certification must be formed 'after reasonable inquiry,' thereby defining a standard of reasonableness under the circumstances by which to measure attorney conduct." *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 870 (5th Cir. 1988). "An attorney's good faith is no longer enough to protect him from rule 11 sanctions." *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir. 1987).

It is well established that Rule 11 imposes the following affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion or other document.

(1) that the attorney has conducted a reasonable inquiry into the facts which support the document;

(2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument "for the extension, modification, or reversal of existing law;" and

(3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation.

*Thomas v. Capital Security Services, Inc.,* 836 F.2d at 873–74.

"The Advisory Committee Note reminds courts to 'avoid using the wisdom of hindsight' and to 'test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.' " *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987). However, "[t]here is an implicit obligation to update because Rule 11 applies to all papers filed in the litigation. Each filing must reflect the results of reasonable inquiry." *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.,* 809 F.2d 451, 454 (7th Cir.1987). I will apply these standards in ruling on Ric Hogan's motion for Rule 11 sanctions.

In support of his counterclaim, Ric Hogan alleges that plaintiff Mike Ousley and his attorney, Gary Hooper, failed to conduct a reasonable factual inquiry before joining him as a defendant in this action. Hogan contends that such an inquiry, if conducted, would have established that he was merely a passive shareholder in Augusta Recreation Enterprises, Inc., the corporation that owned "Bentley's Lounge", and that he was in no way connected with the negotiations which formed the basis of plaintiff's complaint. Plaintiff originally filed this lawsuit in the Northern District of Alabama. Ric Hogan was served with a copy of the complaint in mid September of 1987. Ric Hogan filed an affidavit on Octo-

---

**1.** Prior to the 1983 amendments, Rule 11 was significantly different, providing in pertinent part:

The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for

delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.

Fed.R.Civ.P. 11, 28 U.S.C. (West 1960).

ber 14, 1987, in that case wherein he stated under oath "I never had any contact with plaintiff regarding any of the matters alleged to have occurred in the Complaint, . . . ."

The case was then transferred to this Court, and Ric Hogan filed his answer on December 3, 1987, which again stated that he had no involvement in the transactions which formed the basis of the complaint. Subsequently, plaintiff filed two amended complaints which also listed Ric Hogan as a defendant. In his answers, filed on December 11, 1987, and March 17, 1988, respectively, to both of these amended complaints Hogan stated "[a]t no time herein did any contractual or fiduciary relationship exist between Ric Hogan and agents or representatives of the plaintiff, and at no time did Ric Hogan agree, either orally or in writing to utilize the plaintiff's services." Hogan's 1.6 certificate, filed on December 4, 1987, also showed that Augusta Recreational Enterprises, Inc., was the owner of "Bentley's Lounge".

During his deposition taken on March 25, 1988, Mike Ousley was asked the following questions by Ric Hogan's attorney and gave the following responses:

Q. . . . What knowledge do you have of any dealings Rick Hogan has ever had with Channel 6 or Art Cabot or Pegasus or anybody?

A. None whatsoever.

Q. Do you have any evidence whatsoever that Rick Hogan had any involvement in any of the negotiations or contacts or communications that took place between anybody involved in this case?

A. No, sir.

Deposition of Mike Ousley, March 26, 1988, p. 25. Ric Hogan was dismissed with prejudice on May 9, 1988, following a motion by plaintiff, filed with the Court on May 2, 1988, which requested the same.

In plaintiff's brief submitted to the Court in opposition to the motion for Rule 11 sanctions filed by Ric Hogan, Plaintiff contends that he was told by two separate individuals about Ric Hogan's involvement with the matters specified in plaintiff's complaint and that "Ric Hogan is the one who calls the shots at Bentley's." One of the individuals, Tommy Tompkins, was a resident of Savannah, Georgia, the other individual, Tommy Price, was a security guard at "Bentley's Lounge". Plaintiff concedes that Ric Hogan was joined as a defendant based solely upon these representations made to plaintiff. Plaintiff's counsel contends that he did not learn of the lack of Ric Hogan's involvement in the matters which formed the basis of this lawsuit until the depositions of Mike Ousley, Art Cabot and David Hogan where taken on March 25, 1988. Plaintiff alleges that Ric Hogan was dismissed as a defendant in this lawsuit by him on or about April 15, 1988.

Plaintiff's counsel contends that prior to filing this lawsuit, he made a reasonable investigation to determine whether Ric Hogan was a proper defendant. In addition, plaintiff and his counsel argue that even if the Court concludes that their conduct violated Rule 11, then the Court should reduce the amount of fees and costs requested by Ric Hogan. Plaintiff argues that since Ric Hogan was not properly served—as evidenced by the receipt of service returned to the Court on September 28, 1977, which was signed by David Hogan, not Ric Hogan—the Court should assess against plaintiff and his counsel an amount equal only to the cost to Ric Hogan of having his counsel file a motion to quash and a supporting affidavit.

It is well established that Rule 11 ". . . explicitly requires the attorney to certify that a complaint is well grounded in fact." *Donaldson v. Clark*, 819 F.2d at 1560. Moreover, "[b]lind reliance on the client is seldom a sufficient inquiry . . . ." *Southern Leasing Partners, LTD. v. McMullan*, 801 F.2d 783 (5th Cir.1986). "When the attorney can get the information necessary to certify the validity of the claim in public fashion and need not rely on the client, he must do so. To decide if the attorney may rely solely on his client, he should determine if his knowledge is direct or hearsay and check closely the plausibility of the client's account." *Nassau–Suffolk Ice Cream v. Integrated Resources*, 114

F.R.D. 684, 689 (S.D.N.Y.1987). "An attorney has not made a 'reasonable inquiry' concerning the facts, if he has not made any inquiry, or if he has relied only on his client, when time permitted him to make a further investigation." *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 206 (E.D. Ky.1987). "A defendant must not be joined, or claim asserted against a defendant merely in the hope that discovery will turn up something against that defendant." *Whittington v. Ohio River Co.*, 115 F.R.D. at 206.

■ In the instant case, counsel for plaintiff contends that he relied upon hearsay statements made by two individuals to his client concerning Ric Hogan's connection with the matters which formed the basis of this lawsuit. The record of this case is devoid of any supporting affidavits or depositions from these two individuals. However, as discussed above, the record is full of statements made by Ric Hogan denying any involvement in the transactions alleged in plaintiff's complaint. Counsel for plaintiff contends that he did not learn of Ric Hogan's lack of involvement until the March 25, 1988, depositions of plaintiff, David Hogan and Art Cabot. However, the deposition testimony of plaintiff, Mike Ousley, expressly reveals that as of March 25, 1988, he did not have any knowledge of dealings between Ric Hogan and any party involved in this lawsuit. During the March 25, 1988, deposition, plaintiff never mentions the alleged hearsay statements of the two individuals.

Furthermore, counsel for plaintiff tries to excuse his lack of sufficient factual inquiry by arguing that Ric Hogan or his counsel failed to properly object to service of process or file any factual affidavit setting forth the reasons why they alleged that Ric Hogan was not involved in the facts of this lawsuit. However, if Ric Hogan had objected to service of process, plaintiff, in all likelihood, would merely have re-effected service. Additionally, "[t]he burden cannot be shifted to a defendant to prove himself out of the case after filing." *Whittington v. Ohio River Co.*, 115 F.R.D. at 207.

Accordingly, I conclude that Ric Hogan was joined as a defendant to this lawsuit upon the hope of plaintiff's counsel—supported, at best, by undocumented hearsay statements of two individuals—that as discovery progressed Ric Hogan would somehow be implicated in the transactions which formed the basis of plaintiff's complaint. Therefore, I find that plaintiff's counsel, Gary Hooper, violated Rule 11 by failing to conduct a reasonable factual inquiry and neglecting his continuing obligation to review, reexamine and reevaluate his client's position as facts were discovered after the filing of plaintiff's initial complaint.

■ Ric Hogan requests that the Court hold both plaintiff, Mike Ousley, and his attorney, Gary Hooper, jointly and severally liable for violating the rule. However, "Rule 11 directs that the sanction should fall upon the individual responsible for the filing of the offending document." *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985). " ... [T]he district court is in the best position to judge the relative responsibility of counsel and client, and to apportion the sanction accordingly." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1178–79 (D.C.Cir.1985). The evidence in the instant case suggests that plaintiff merely informed his attorney of statements made by two individuals which implicated Ric Hogan. The duty to conduct a reasonable factual inquiry to support Ric Hogan's inclusion as a defendant in this case falls primarily, if not solely, upon the shoulders of the plaintiff's attorney. The evidence does not support a conclusion that plaintiff encouraged or forced his attorney to maintain Ric Hogan as a defendant. Accordingly, I conclude that plaintiff's attorney is solely liable for sanctions imposed as a result of this Rule 11 violation.

■ Having established liability, I will now determine the amount of sanctions to be assessed against plaintiff's counsel. "The imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11." *Donaldson v. Clark*, 819 F.2d at 1551. District courts are vested with broad discretion to fashion an appropriate sanction for violations of

Rule 11. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 255 (2d Cir.1985). In the instant case, Ric Hogan was represented by two separate attorneys. His current counsel has filed documentation setting forth Ric Hogan's out of pocket expenses and obligations which total $4,780.69. This figure represents expenses incurred not only for Ric Hogan's defense, but also in bringing his rule 11 motion. *See Brandt v. Schal Associates, Inc.,* 121 F.R.D. 368 (N.D.Ill.1988). The rates charged for the legal services rendered to Ric Hogan were $65.00 per hour. I find that these rates are reasonable and HEREBY AWARD Ric Hogan Rule 11 sanctions in the amount of $4,780.69 against attorney Gary Hooper.

ORDER ENTERED.