**Victoria E. ULLMANN, Plaintiff,**

v.

**OLWINE, CONNELLY, CHASE, O'DONNELL & WEYHER, et al., Defendants.**

**Civ. A. No. C–3–85–233.**

United States District Court, S.D. Ohio, W.D.

Sept. 14, 1987.

Victoria E. Ullmann, Columbus, Ohio, pro se.

Gary Hoppe, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendants.

## MEMORANDUM OPINION AND DECISION GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS

MICHAEL R. MERZ, United States Magistrate.

This case is before the Court upon motion of Defendants (Doc. # 111) to enforce

a settlement agreement between themselves and the Plaintiff.

Plaintiff commenced this action by filing a thirteen count Complaint in March, 1985. Defendants responded with a summary judgment motion and a motion for sanctions under Fed.R.Civ.P. 11 (Doc. # 6). In August, 1986, the parties consented to magistrate trial jurisdiction under 28 U.S.C. § 636(c)(Doc. ## 29, 30, 31). The Court then ruled on the summary judgment motion by dismissing ten of the thirteen counts and Defendants filed a three count counterclaim. Two of those counts were dismissed and the case proceeded to trial on July 27, 1987, without a jury. In the claims remaining for trial, Plaintiff sought relief on two theories under Title VII of the Civil Rights Act of 1964 and a declaratory judgment that a prior settlement between her and the Defendants did not bar her from proceeding. Defendants sought damages in fraud related to the prior settlement.

Plaintiff was her own last witness. Near the end of her direct testimony and shortly before the usual lunch recess, the Magistrate inquired of both counsel if there was any possibility of settlement. Defendants' counsel indicated his willingness to forego the counterclaim and request for Rule 11 sanctions in return for dismissal of the Complaint with prejudice and general releases of all persons involved in the case; he absolutely refused to consider paying any money to Plaintiff, expressing his confidence in the strength of Defendants' position. Defendants' counsel advised the Court and Plaintiff's counsel that Defendants had expended approximately $80,000 in attorney fees prior to starting the trial; since he felt the entire case was frivolous, he stated to the Court and Plaintiff's counsel his belief that the entire amount of such fees could be recovered under Rule 11.

Plaintiff's counsel asked for time to discuss the matter with his client over the lunch recess and an extended recess (more than 1½ hours) was taken.

When the parties returned after lunch, Plaintiff's counsel indicated the proposal was acceptable in principle, but that details needed to be negotiated. The recess then continued for another 1½ hours until counsel advised the Court that an agreement had been reached.

Because of the acrimony between the parties, the Court insisted that the settlement be recited for the record. That record has now been transcribed and is filed at Doc. # 108; it shows that Court resumed at 3:00 P.M., proving that Plaintiff had over three hours to discuss the settlement, rather than the ten minutes she asserts in her motion papers. The record shows that Mr. Hoppe, Defendants' counsel, carefully stated the terms as he understood them. Mr. Glasper, Plaintiff's counsel, listened carefully and corrected one omission Mr. Hoppe had made. All parties stated on the record that what had been recited represented their agreement. (Defendant Job Taylor additionally asked that the record be sealed and all parties recognized this would have to be by separate motion to the Court.) Miss Ullmann explicitly said that she was settling the case and that she intended to settle the case (Doc. # 108, p. 6).

The arrangements for memorializing the settlement were that Mr. Hoppe was to prepare what he believed was the appropriate documentation and forward it to Mr. Glasper, which he did (Hoppe Affidavit, attached to Doc. # 111, Par. 2). Mr. Glasper was to review the paperwork, approve it, sign it, and forward it to his client, which he did (Hoppe Aff., Par. 3). Miss Ullmann was then to execute the documents, which she has refused to do (Hoppe Aff., Pars. 6 & 7), occasioning the instant motion.

Miss Ullmann concedes throughout her opposing papers that a settlement in fact was reached. She opposes its enforcement on three grounds:

1. Part of the consideration given by Defendants—waiver of their Rule 11 claims—either is so insubstantial that it should not count for consideration because Defendants did not have a colorable sanctions claim or should not legally be permitted to be consideration for a settlement in any case;

2. The settlement was coerced by the threat of sanctions and insufficient time to consider the issues involved and therefore was not voluntary on her part;

3. Assuming a valid agreement was reached, it has been rescinded by the acts of the parties to it.

Each of these grounds will be considered in turn.

## A. CONSIDERATION FOR THE SETTLEMENT

### 1. *Waiver of Rule 11 Sanctions as to Filing of the Complaint Itself*

Part of the consideration for the settlement was Defendants' waiver of their claims against Plaintiff under Fed.R.Civ.P. 11 (Doc. # 108, p. 2). Reading Miss Ullmann's motion papers, one would be led to believe that the issue of Rule 11 sanctions had been raised for the first time when the Magistrate interrupted her testimony, called counsel into chambers, and threatened to impose $80,000 to $100,000 in attorney fees unless she settled. Nothing could be further from the truth.

Defendants first sought Rule 11 sanctions in connection with their initial motion for summary judgment, filed in April, 1985, in response to the Complaint. Defendants asserted that the Complaint itself was sanctionable because unfounded in fact or law and filed for the purpose of harassment. (See Doc. # 6).

When ruling on the motion for summary judgment, the Court reserved ruling on the Rule 11 motion. It was the Court's position that discovery and trial would disclose whether there was a reasonable factual and legal basis for the Complaint (Doc. # 44, p. 36). Therefore, a ruling on that sanctions motion was deferred until after trial. The parties were specifically advised in the final pre-trial order that the Court would take up that motion once the trial was concluded (Doc. # 100). If the Plaintiff prevailed on the merits or at least presented a colorable case, Defendants' assertion the Complaint was baseless would obviously be moot. But if Defendants had an arguable Rule 11 motion that the Complaint itself was baseless, Plaintiff would still be entitled to a hearing on sanctions. Postponing the question until after trial served purposes of judicial economy and also the convenience of the parties, who could thereby make one trip to Dayton rather than two. No party ever objected to the postponement of the motion until after trial.

█ The Court has never indicated, verbally or in writing, on or off the record, that it had decided the merits of Defendants' initial Rule 11 motion related to the filing of the Complaint. However, Plaintiff's position that the original sanctions motion was so baseless that its dismissal is not adequate consideration for settlement now requires the Court to express some opinion on that motion.

The weakness of the Complaint is demonstrated by the dismissal of ten of its thirteen counts on motion for summary judgment. Plaintiff submitted no factual material in opposition to the motion for summary judgment except her own affidavit. Several of the counts were dismissed without prejudice for failure to state a claim, but Plaintiff never bothered to file an amended complaint. As the Court indicated in its Decision on the summary judgment motion, Plaintiff faced a serious credibility problem on the undismissed counts because of her extraordinary correspondence with Defendants after her termination, correspondence which Plaintiff has characterized as normal negotiation but which Defendants have more accurately called "extortionate." (Taylor Affidavit, attached to Doc. # 6, Par. 17) Miss Ullmann had filed a Complaint on claims at least partially settled with Defendants and partially withdrawn by her from Ohio Civil Rights Commission evaluation to avoid an adverse probable cause determination. The Court believes Defendants' case for Rule 11 sanctions as to the filing of the Complaint is certainly strong enough for its waiver to be sufficient consideration to support a settlement.

### 2. *Waiver of Sanctions for Post–Filing Conduct*

█ Defendants also sought sanctions against Plaintiff for her behavior in con-

ducting this case, as well as in bringing it (Doc. ## 104, 105). Defendants' supplemental sanctions motion was filed on the first morning of trial and largely summarized the position Defendants had taken in numerous conferences and prior filings with the Court that Plaintiff's conduct of the case after filing was sanctionable.

In contrast to the Court's silence on the merits of the original Rule 11 motion, the Court has already found much of the complained-of conduct during the course of trial preparation to be in violation of the Civil Rules and this Court's trial preparation orders.

Some of the worst examples of inappropriate and unprofessional conduct are as follows:

1. Ignoring the Court's scheduling order by attempting to add twenty-eight witnesses or categories of witnesses to the trial witness list six weeks after it was due and less than a month before discovery cut-off (See discussion at Doc. # 67, pp. 5–7.)

2. Setting depositions on inadequate notice (See Doc. ## 76, 85, 86).

3. Failure to properly prepare the required final pre-trial order, including failure to prepare proposed findings of fact and conclusions of law and failure to prepare a trial brief (Doc. # 100, pp. 2–3).

4. Failure to preserve the testimony or obtain the trial appearance of designated expert witnesses Laura Stafford and Eugene Brundige.

5. Failure to tender trial exhibits conforming to the exhibits listed in the Final Pre-trial Order.

6. Attempted interlocutory appeal from a non-final order.

7. Utterly frivolous motion to disqualify, filed to delay trial, without support in law, and based on facts known to Plaintiff when she consented to Magistrate trial jurisdiction in the first place (See Doc. # 93).

8. Failure to serve trial subpoenas on listed witnesses (Doc. # 103).

Some of this behavior has already been sanctioned: the late witness list was stricken, and failure to subpoena witnesses carries its own penalty. The Sixth Circuit has emphasized that sanctions motions must be carefully analyzed for a statutory or rule basis and separated as to which conduct is being sanctioned under which rule. *In re Alan Miles Ruben,* 825 F.2d 977 (6th Cir.1987). Although all of this conduct is unprofessional, some of it is not sanctionable at all and some may be sanctionable under authority other than Rule 11.

However, Defendants draft settlement agreement proposes to waive and release *all* sanctions claims (Doc. # 111, Ex. 2, Pars. 5 & 6). Prima facie, a strong claim could be made for sanctions under Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent power at least as to the late witness list, the improper appeal, and the groundless motion to disqualify. Waiver of those claims, entirely apart from the claim for sanctions as to filing the Complaint, is sufficient consideration to support the settlement agreement.

### 3. *Waiver of the Counterclaim*

■ Defendants also agreed to waive their counterclaim for fraud as part of the settlement.

Plaintiff had previously settled her dispute with Defendants for $1,500. After accepting and cashing the check, she wrote to Defendant Taylor that she had only done so to keep her options open and began a long letter writing campaign to obtain more money (See exhibits to Doc. # 6). Defendants have asserted from the outset that the $1,500 was agreed upon as a settlement in full of all claims by Plaintiff. While dismissing two counts of Defendants' Counterclaim, the Court refused to dismiss the fraud claim (Doc. # 63), and there was strong evidence to support it: Plaintiff's own admission that she had accepted the check only to "keep her options open" (See exhibits to Doc. # 6). By itself, Defendants' release of their Counterclaim for fraud would have been sufficient consideration to support the settlement agreement.

### 4. *Legal Sufficiency of the Sanctions Waiver*

Plaintiff argues that possible Rule 11 sanctions should not be allowed to be used as a "bargaining chip" in settlement negotiations (Doc. # 116, pp. 5–6). She correctly notes that Rule 11 has a deterrent purpose as well as a compensatory one, that sanctions are mandatory once a violation has been found, and that sanctions can be imposed by the Court *sua sponte*. *Ruben, supra; Albright v. Upjohn*, 788 F.2d 1217 (6th Cir.1986).

However, the Sixth Circuit has strongly emphasized that, while the imposition of sanctions is mandatory once a violation is found, the measure of sanctions is largely compensatory: what has it cost the injured party to respond? *Ruben, supra*. Parties injured by Rule 11 violations have a duty to mitigate their damages and courts are instructed to decide whether they have "overspent" in responding to such violations.

■ Since the district courts have *sua sponte* authority to impose Rule 11 sanctions, this Court agrees that parties may not bargain away that power in a particular case. But the Court also knows of no valid reason why a party cannot given up its own claim to compensation for such a violation. The law strongly favors settlement of disputes. Certainly given the demands on judicial time, that policy applies very strongly to meritless litigation. To rule that a party cannot give up its claim to compensation for defending what it regards as a frivolous claim in order to obtain a dismissal with prejudice of such a claim would be in essence to rule that courts must try all such claims and the resultant Rule 11 motions, even though the parties agree that the complaint is sufficiently weak and the Rule 11 motion is sufficiently strong that reciprocal dismissals are to their mutual benefit. That position assumes unlimited judicial resources and is completely contrary to the policy favoring settlements. This Court holds that waiver of a claim to compensation for Fed.R.Civ.P. 11 violations may legally be consideration for settlement of litigation.

In sum, Defendants' waiver of their sanctions claims, along with their fraud counterclaim, was factually and legally sufficient consideration to support the settlement agreement.

## B. PLAINTIFF'S CLAIM OF DURESS

Plaintiff asserts the settlement agreement is void because her assent was induced by duress, to wit, the threat of sanctions. A distinction must be drawn between two kinds of threats which are not clearly distinguished in Plaintiff's Memorandum.

■ A threat by a judge to impose sanctions unless a party settled a case might well be duress sufficient to void a settlement. Factually, nothing of that sort happened in this case. The Magistrate *never* spoke personally with the Plaintiff about sanctions, nor did he ever tell her counsel that he would impose sanctions if she refused Defendants' offer. She concedes as much by not contending there was any personal conversation or indirect threat through her counsel. Instead she says:

> Even if the court did not intend to indicate that plaintiff would be sanctioned, the magistrate's comments and attitude created that impression.

(Doc. # 116, p. 8).

Plaintiff's notion of a threat of sanctions from the Court is, by her own admission, a product of her inference from the circumstances or her imagination. She gives no indication which of the Court's "comments" or manifestations of attitude created this "impression." Furthermore, this inference is all *post hoc*. When called upon in open court to comment on the settlement and indicate if she assented, Plaintiff, an attorney admitted to practice for nearly ten years, made absolutely no suggestion that the Court had threatened her.

The Court did initiate the settlement discussions by asking whether counsel thought it was appropriate to discuss settlement. But the Court did so at the point when the Plaintiff's case was at its strongest: near the end of Plaintiff's case in chief and her own direct testimony, before the Defendants had cross-examined her or

presented any evidence of their own. Certainly thousands of cases in this country are settled every year after trial begins, and frequently it is the court which initiates such discussion. A suggestion of settlement discussions is not a threat of sanctions.

Defendants' position is quite different from the Court's. Defendants did "threaten" Plaintiff with sanctions: they filed their motion for sanctions for filing the complaint in April, 1985, they supplemented it with the motion related to trial preparation conduct on the first day of trial, and Mr. Hoppe indicated forcefully to Mr. Glasper in the settlement negotiations Hoppe's intention to pursue sanctions.

█ Plaintiff asserts Defendants' threat to pursue sanctions was made in bad faith and was an improper use of power (Doc. # 116, p. 8). The Court disagrees.

Defendants were in a strong bargaining position. Plaintiff was nearly at the point of resting her case. She had failed to obtain the presence or testimony of either of her expert witnesses. She had failed adequately to serve subpoenas on several of her key factual witnesses. She had failed to lay an adequate foundation for the admission of many of her exhibits. She was about to be cross-examined, and Defendants had her deposition in which she had made a number of quite damaging admissions.

While Plaintiff's position was not strong at that point, it could only have gotten worse. She had no additional witnesses to offer. If Defendants had prevailed on a motion to dismiss at the close of Plaintiff's case, they would have had no incentive to give up their sanctions claim.

There was no bad faith in Defendants' pressing their sanctions claim during the settlement negotiations. "Bad faith" would seem to imply insisting on a claim known to be worthless or worth little. But all parties knew the Court had dismissed ten of the thirteen counts in the Complaint and had expressed its opinion that several aspects of Plaintiff's pre-trial conduct were sanctionable. Defendants could reasonably infer from those facts that they had a good chance of prevailing on their sanctions motion. Insisting on a claim on which one has a good chance of prevailing is hardly bad faith.

Plaintiff claims that even if Defendants were not acting in bad faith, they somehow abused their power in pressing their sanctions claim in settlement negotiations. This argument is opaque to the Court. If Plaintiff means that Rule 11 sanctions should never be used as a "bargaining chip" in settlement negotiations, that argument has already been dealt with. If Plaintiff means something else, she has not adequately explained her meaning to the Court.

If there was any objective coercion of Plaintiff (as opposed to her subjective impressions), it was from the circumstances in which she found herself. Her case had barely survived a motion for summary judgment. What survived had been poorly prepared for trial and was substantially undermined by her admissions on deposition and her failure to have key witnesses present or preserve their testimony. That is indeed a perilous condition for a Plaintiff near the end of her case in chief.

Plaintiff is wont to whine about the imbalance of power in this case between herself and Defendants, whom she characterizes as a "large Park Ave. law firm." (See, e.g., Doc. # 116, p. 7). However, when she was threatening to sue them, she bragged of her ability to conduct sophisticated litigation and warned it would cost them more to defend themselves than to pay her off. (Ullmann letter to Taylor 11/30/84, attached as Ex. 8 to Taylor Affidavit, Doc. # 6)

But if Plaintiff had, as she asserts "complete confidence in her case" (Affidavit of Plaintiff attached to Doc. # 116, Par. 3), she had a readily available alternative: the Court was fully prepared to proceed with the trial. A full week had been set aside, a courtroom was available, no other cases were set, and a court reporter was present. All Plaintiff had to say was "no." Instead, she said "yes" (Doc. # 108, p. 6), that she

was in agreement with the settlement terms as they had been discussed.

■ Plaintiff now complains that she did not have enough time for reflection and research. She never asked the Court for additional time.

Plaintiff notes that she was tearful and emotionally distraught during the settlement recital and therefore it was involuntary. She did not ask for time to compose herself. The Court notes that she has used the same excuse to attempt to avoid the consequences of having settled this matter before with Defendant Taylor.

Plaintiff claims she gets little or nothing from the settlement, but on the record she said

> The goals that I wish to accomplish have largely been accomplished. I feel that by continuing to litigate it will not particularly assist anyone with similar problems, however, by pursuing publications within the ramifications of the agreement with Defendant I believe that there will be more benefit provided to both myself and any one else that wishes to litigate in this area and concerning the low amount of wages that is actually at stake in this matter it seems that it has reached the point of diminishing returns as far as I'm concerned.

(Doc. #108, p. 7)

Much litigation, including criminal cases, is settled during or on the eve of trial. That is because the heated crucible of trial forces parties to assess their situations realistically and to make the best bargain the circumstances allow. That is what Plaintiff did here. Rather than live with the bargain she struck, she is now attempting to obtain an additional cash payment from Defendants (See p. 4 of Plaintiff's 8/16/87 letter to Mr. Hoppe, Ex. 5 to Doc. #111).

Plaintiff is an experienced attorney. She agreed on the record in open court without any protest of conditions to quite explicit terms of settlement. If she is permitted to repudiate this settlement on grounds it was involuntary, then it is hard to imagine any settlement agreement which would be enforceable.

## C. PLAINTIFF'S CLAIM OF RESCISSION

■ Plaintiff asserts that by threatening to return the case to Court if she did not sign the settlement documents, Defendants rescinded the settlement agreement. The facts recited by Plaintiff, even if true, do not constitute a mutually agreed rescission. The obvious consequence of a failure to consummate the settlement would be a return to Court. The fact that neither party would admit to the other that it was concerned about such a consequence does not prove they agreed to come back to Court and abandon the settlement.

In sum, the Court concludes the parties voluntarily entered into an enforceable settlement agreement.

## D. THE TERMS OF THE SETTLEMENT

Plaintiff objects that certain terms included by Mr. Hoppe in his draft agreement were not agreed upon in Court. This objection is well taken.

This is not a case requiring an evidentiary hearing on what the terms of settlement actually were: they were recited into the record in open court. *Compare Kukla v. National Distillers Product Co.,* 483 F.2d 619 (6th Cir.1973) with *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.1976). Nor is it a case requiring interpretation by the Court of the terms of a written settlement agreement: the parties have never signed such an agreement. Rather, the Court is called upon to enforce what Plaintiff agreed to verbally, and no more.

The terms recited for the record are as follows:

1. All of Plaintiff's claims are to be dismissed with prejudice.

2. Defendants' Rule 11 Motion(s) are to be withdrawn or denied with prejudice.

3. Plaintiff and her trial attorney are to execute releases in favor of Defendants, International Business Machines Corp., all witnesses in this case, and all other persons involved with the transaction out of which this case arose.

4. The facts of this case are to be kept confidential by all parties, provided that if Defendants or any of them are subpoenaed to testify about Plaintiff in any other proceeding, they will give Plaintiff notice of the subpoena but will have no other obligation to resist the subpoena.

5. Defendants' Counterclaim is to be dismissed with prejudice.

6. Plaintiff is to be allowed to make a statement on the record about the settlement.

All of these terms are clearly stated on the record of the settlement (Doc. # 108).

Plaintiff has objected in correspondence with Mr. Hoppe to a New York choice-of-law clause in the proposed settlement agreement. In her motion papers (Affidavit attached to Doc. # 116, par. 17), she objects to what she characterizes as a liquidated damages clause. (There is no liquidated damages clause in the proposed settlement agreement, Doc. # 111, Ex. 2, but the document does propose mutual liability for attorney fees in the event of breach, See Par. 8(f)). Since neither provision was agreed to on the record, neither will be enforced.

Plaintiff also claims she never agreed to make anyone beneficiaries of the settlement other than the actual parties (Affidavit attached to Doc. # 116, Par. 17). The record of the settlement in open court belies this assertion (Doc. # 108, pp. 2–3).

Defendants are entitled to specific performance of the settlement agreement terms recited on the record. The Court's Orders in this regard are set forth at the end of this opinion.

## E. THE PARTIES CROSS POST–TRIAL MOTIONS FOR SANCTIONS

Both parties have filed post-trial motions for sanctions which will be dealt with separately.

### 1. *Plaintiff's Motion (Doc. # 115)*

Plaintiff seeks relief pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and the Court's inherent power to punish Defendants' conduct.

Each item of Defendants' conduct which Plaintiff claims is sanctionable occurred before the settlement was agreed upon. As part of the settlement, Plaintiff agreed to release all claims against Defendants arising out of or connected with this litigation. Since the Court has determined that the settlement is to be enforced, Defendants are entitled to a denial of Plaintiff's motion for sanctions pursuant to the settlement.

However, even if Plaintiff had not agreed to release her claims, her sanctions motion is without merit as set forth below.

a. Plaintiff claims Defendants filed false affidavits and misled the Court on the issue of whether Plaintiff's co-workers, the other document reviewers, were independent contractors. In its Decision on the motion for summary judgment, the Court recognized that determination of this question would differ depending upon what legal significance was given to the conclusion. The evidence of the status of the other reviewers was at least equivocal: all of them worked for a time through temporary services and for a time on direct contract with Olwine. The materiality of this matter, which seems quite important to Plaintiff, is opaque to the Court. There has never been the slightest evidence that Plaintiff ever worked through a temporary service; her contract was always directly with Olwine and it was her contract which was in issue. In any event, the Court sustained Plaintiff's position that she was an employee for Title VII purposes, at least for purposes of getting by the summary judgment motion. Furthermore, Plaintiff was given an opportunity to present whatever evidence she wanted on this issue at trial and she failed to properly serve subpoenaes on not one, but all three of her witnesses on this issue. Her claim for sanctions on this issue is not well taken.

b. Plaintiff also claims Defendants have deliberately misled the Court as to the significance of the number of boxes of documents reviewed by each document reviewer (Doc. # 115, p. 8). Plaintiff argues that she has testified that the boxes varied widely in content (Doc. # 115, p. 8). How-

ever, she also stipulated in the Final Pre–Trial Order that she reviewed fewer than one-half as many as the next least productive reviewer and fewer than one-third as many as the most productive reviewer (Doc. # 99, Uncontroverted Facts, Par. 18). The significance of that differential is for the Court to decide. In fact there is no testimony that Plaintiff got all the complex boxes and the other reviewers got the ones with the shoes and ties.

c. Plaintiff claims Defendants' original Rule 11 motion is sanctionable because it was without a basis in existing law. The Court has already found above that the motion was sufficiently well grounded to constitute sufficient consideration for the settlement agreement, and the Court declines to comment further on its grounding.

d. Plaintiff claims that Defendants' counterclaim contained two counts which were dismissed, which is true. Those counts were for violation of Rule 11 and for malicious prosecution. Even if in the abstract the filing of such claims would support a claim for sanctions on Plaintiff's part, Plaintiff has agreed to settle this matter by, among other things, releasing Defendants from any liability arising out of the litigation prior to the settlement (Doc. # 108, p. 2).

· e. Plaintiff claims that Defendants are sanctionable for attempting to litigate the issues of *Ullmann v. Grandjean* (Plaintiff's case against her last employer before Defendant Olwine contracted with her) in this case. In fact, no documents related to that case were ever introduced in this case, since the Court never reached Defendants' case in chief.

In sum, Plaintiff's motion for sanctions is without merit and is denied in its entirety.

### 2. *Defendants' Motion for Sanctions Relating to Plaintiff's Post–Trial Conduct*

Defendants have moved for sanctions for Plaintiff's post-trial conduct in refusing to execute the settlement documents or otherwise comply with her agreement to settle the case (Doc. # 111).

As Defendants point out, the Sixth Circuit has expressly held that

Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the Court, to make every reasonable effort to see that the agreed terms are fully and timely carried out.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

The Court finds that there is probable cause to believe Plaintiff, without any valid basis, attempted to repudiate a settlement agreement entered into voluntarily, with the advice of counsel, and in open court. There is further probable cause to believe that such behavior was in bad faith and unnecessarily and vexatiously prolonged these proceedings by requiring the Defendants to move for enforcement of the settlement. Thus such behavior is prima facie sanctionable under the Court's inherent power and under 28 U.S.C. § 1927. Defendants' post-trial motion for sanctions is hereby set for hearing on October 15, 1987, at which time Defendants may present evidence of their expenses reasonably incurred in enforcing the settlement agreement and Plaintiff may show cause, if cause there be, why she should not be sanctioned.

### F. PLAINTIFF'S ATTACK ON THE MAGISTRATE'S LAW CLERK

Not content to repudiate her settlement agreement and repeat her aspersions on the Court's fairness, Plaintiff has taken the occasion of her recent filings to make a gratuitous, unwarranted, immaterial, and unfair attack on the professional character of the Magistrate's law clerk, Theresa G. Haire. In her Affidavit attached to Doc. # 116, she asserts:

... I saw Theresa Haire, the magistrate's clerk, squeeze up her nose, wiggle her shoulders and repeat silently testimony I had just given.

Plaintiff was not capable of litigating her case. She failed to subpoena adverse witnesses, failed to arrange for the presence of her own witnesses, failed to file exhibits conforming to her exhibit list, failed to file proposed findings of fact and conclusions

of law, and failed to proffer a trial brief. She attempts to cover these and other failings by an *ad hominem* attack on the Court's fairness through the Court's law clerk.

Needless to say, the record does not reflect any such conduct by Ms. Haire and Miss Ullmann utterly failed to note any such conduct when it could have been made a matter of record. Competent trial counsel, observing non-verbal courtroom conduct which causes alarm, would note the matter then and there for the record so that others who were present could contribute their perceptions and the Court could make a correction, rather than waiting until six weeks later to start a "war of affidavits." Ms. Haire's Affidavit, filed contemporaneously herewith, denies categorically any such conduct. The Court finds Ms. Haire's affidavit credible and Miss Ullmann's incredible.

The Court further finds Plaintiff's conduct in making this allegation against Ms. Haire to be a violation of Fed.R.Civ.P. 11 in that it is ungrounded in fact, totally meaningless as a matter of law, and interposed for an improper purpose, to wit, to harass and ridicule without cause a dedicated public servant. Since as Plaintiff herself points out, the Court may impose Rule 11 sanctions *sua sponte,* it shall do so for this baseless attack unless Plaintiff shows good cause to the contrary on or before October 15, 1987. Plaintiff may purge herself of this violation by withdrawing the allegation and apologizing in writing to Ms. Haire.

## G. DIRECTIONS TO THE PARTIES AND TO THE CLERK

It is hereby ORDERED that:

1. Not later than October 1, 1987, Plaintiff shall execute and deliver to the Court general releases in the form attached to Doc. #111 releasing Defendant Olwine, Connelly, Chase, O'Donnell & Weyher, Defendant Job Taylor III, and each of nonparties International Business Machines Corp., Frieda T. Brigner, Susan C. Gingerich, Karen A. Oswalt, Barbara F. Shook, and Tai Agbomeirele.

2. Not later than October 1, 1987, Defendants Olwine, Connelly, Chase, O'Donnell & Weyher and Job Taylor III shall execute and deliver to the Court general releases of Plaintiff.

3. The Court will not deliver any of the releases to any of the released parties until it has received the same in form conformable to the settlement agreement.

4. The parties are ordered to keep the facts of this case confidential, provided that, if Defendants, or either of them, is compelled by judicial or administrative process to testify concerning the facts of this case, the compelled party shall give seasonable notice of the service of such process by certified mail to Plaintiff at 2658–F Old Forge Road, Columbus, Ohio 43209.

5. The Clerk shall forthwith enter judgment dismissing the Complaint and the Counterclaim herein with prejudice, each party to bear its own costs. The Court explicitly retains jurisdiction as necessary for further enforcement of the settlement agreement. The Court expressly determines that all counts of the Complaint ordered dismissed without prejudice in the ruling on Defendants' motion for summary judgment should now be dismissed with prejudice because Plaintiff has so agreed in the settlement agreement and also because Plaintiff has failed to timely pursue such claims by amending her Complaint to state claims upon which relief can be granted.